RASMUSSEN FARMS, A PARTNERSHIP, APPELLANT, V.
ANNA GOVE ET AL., APPELLEES.

267 N. W. 2d 764

Filed July 19, 1978. No. 41597.

C. Patrick Shaughnessy, Jr., of Shaughnessy, Shaughnessy & Shaughnessy, for appellant.

O. Wm. VonSeggern of Cunningham, Blackburn, VonSeggern, Livingston & Francis, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

In this action, plaintiff seeks to establish legal title to 1.33 acres of farm land on the easterly boundary of the southeast quarter of Section 18, Township 16 North, Range 11 West of the 6th P.M., in Howard County, Nebraska. Plaintiff-appellant claims its predecessor in interest acquired title to the strip by adverse possession. This claim is denied by the defendants-appellees. The trial court found plaintiff had failed to establish adverse possession, and entered judgment for the defendants. We affirm.

Plaintiff, Rasmussen Farms, is a partnership comprised of Dean, Dennis, and Bob Rasmussen. Since 1965, it has been the record owner of a portion of the southwest quarter of Section 17, Township 16 North, Range 11 West of the 6th P.M., in Howard County. Defendants are the record owners of the east half of the southeast quarter and the south half of the northeast quarter of Section 18, Township 16 North, Range 11 West of the 6th P.M., in Howard County, which includes the disputed strip. This land has been in the defendants' family since 1890.

The properties of the parties abut for a distance of 1,458.6 feet along the section line, running north from the southeast corner of Section 18. The strip of land, 1.33 acres in area, is located to the west of this line in Section 18. This dispute arose when defendants attempted to build a private road upon this strip of land.

Plaintiff's claim to the strip of land is based upon a fence line which it contends was established in

1947, by its predecessor in title, Peter Rasmussen, no relation to the partners. The fence line may be described as consisting of three sections. Beginning in the south end, photographs show there are three old fence posts unconnected by wire. A survey conducted for plaintiff establishes that the corner post is 49 feet north of the southeast corner of Section 18, and 8.3 feet west of the section line. The northernmost post is 173 feet north of the section corner and 13 feet west of the section line. A row of trees begins about 500 feet north of this post and continues for another 500 feet. Some of the trees have barbed wire attached to them. The south end of the row of trees is 45 feet west of the section line and the north end is 69 feet west of the section line. The survey locates another fence post among the trees at a point 1,100 feet north of the section corner and 54.7 feet west of the section line.

A driveway runs along the north end of the trees and leads west to a farm house on defendants' property. It is from this driveway that defendants were attempting to construct a road south along the east side of the trees. To the north of the driveway is an enclosure made by newer fencing materials. The fence on the east side of the enclosure is about 250 feet in length. Its distance west of the section line varies from 60.1 feet on the south to 65 feet on the north. Plaintiff's north property line would intersect this fence at a point 1,458.6 feet north of the section corner and 61.6 feet west of the section line.

It is the contention of the plaintiff that the three old posts, the row of trees, and the fence on the east side of the enclosure form close to a straight line which marks the boundary between the properties. Plaintiff's theory of the case is that its predecessor in title, Peter Rasmussen, acquired the title to the strip of land to the east of the fence line by adverse possession in 1957.

Defendants' evidence would indicate the fence line

relied upon by plaintiff was never intended to divide the properties. Peter Rasmussen purchased the adjoining land in 1930, and removed the roadside fence located on it. In 1947, he caused the section line to be surveyed and again erected a fence directly on the section line. This fence was removed in 1965 by Dean Rasmussen after he had secured permission from David Ender to do so. Plaintiff at that time was a tenant on the defendants' farm and Dean Rasmussen was given permission to remove the fence so he could farm the extra 1.33 acres that lay between the east edge of the trees and the section line.

Defendants' evidence further indicates the fence line which ran through the trees has existed since prior to 1900, when a private road ran along the section line. Another fence stood on the east side of the road until it was removed by Peter Rasmussen previous to the 1947 survey. Peter Rasmussen, with his two brothers, purchased the property now owned by the plaintiff in 1930. He testified there was a north-south fence on the property at the time of purchase, which he relocated further west. He moved the fence again in 1947, after having the section line surveyed. Peter Rasmussen, who was 95, testified that the three fence posts shown in the photographs were part of the fence he erected in 1947. However, he was certain he and a surviving brother erected the fence on the survey line. He did remember there had been an old private road between his property and that of the defendants. He further testified that although the description of the property in the deed to plaintiff did not include the disputed strip of land, his intention was to convey all the property up to the fence line.

From 1954 to 1972, the plaintiff leased the defendants' property, and Dean Rasmussen moved into the Ender home place and physically farmed the Ender land. The plaintiff purchased the adjoining land from Peter Rasmussen in 1965. In 1972, defendants

did not renew the lease with the plaintiff and new tenants moved into the Ender place. Plaintiff continued to farm the disputed 1.33 acres for the next 4 years, until defendants attempted to put in a new road on the west edge of the section line.

Defendants' surveyor testified that the fence through the trees, in his opinion, was not placed according to a survey because it did not have any direction north and south as such. As noted heretofore, Peter Rasmussen testified that after he had the property surveyed in 1947, he put his fence on the survey line. He was asked if the surveyed land kind of split the old road. He answered in the affirmative. He took his fence down, had the land surveyed, and put a new fence in on the survey line.

Bob Rasmussen, who was one of the partners leasing defendants' land from 1954 to 1972, testified there was only one fence dividing the properties. Dean Rasmussen also testified there had been only one fence. Dennis Rasmussen testified that for as long as he could remember, since about 1947, there had only been one fence. The fence they remembered was the one which extended to a large tree located 2,460 feet north of the section corner and 117 feet west of the section line. Wilbur Leth, who picked up silage from plaintiff's property the past 20 years, and Harlan Wells, who hunted on the property for a period of 35 years, both testified they had observed only one fence, the remnants of which are those described by the plaintiff.

Ruth Ender Baker, one of the defendants, had lived on the farm with her parents from 1903 to 1923. She testified there was a fence on both sides of a road which ran along the east side of the trees, and led up to their farm house. David Ender, who was born on the farm in 1912, and lived there until 1923, also testified there was an old road and two fences. The west fence ran through the row of trees. He testified the road was abandoned because it became

impassable when water collected in low spots. Another road was built which ran directly south from the farm house. Defendants' reason for moving the road back to the section line was to permit the installation of an irrigation system on the property.

David Ender further testified that Peter Rasmussen removed the fence which had been on the east side of the old road. The fence, erected in 1947, ran down the center of the old road along what was supposed to be the section line as surveyed. In 1965, he gave permission to Dean Rasmussen to tear down this fence so the land which was between the two fences could be cultivated.

The trial court found Peter Rasmussen and his brother caused the property to be surveyed and staked on the section line in 1947, and that a fence was established on the section line which split the old road and remained in the same location until 1965, when Peter Rasmussen sold the land. The court further found that Peter Rasmussen and his tenant farmed only to the section line fence until 1965; that from 1954 to 1972, Dean Rasmussen, partner in the plaintiff partnership, was a lessee of the Ender property; and that in 1965, Dean Rasmussen recognized the Ender title to the disputed area in that he asked and received permission from David Ender to take down the fence in the road and farm to the trees. The trial court found plaintiff had not established open, notorious, adverse possession to the disputed premises for 10 or more consecutive years.

One who claims title by adverse possession must prove by a preponderance of the evidence that he has been in actual continuous, exclusive, notorious, and adverse possession under claim of ownership for a full period of 10 years. Barnes v. Milligan, 200 Neb. 450, 264 N. W. 2d 186 (1978). We do not believe that plaintiff met this burden.

As is evident from the recitation of testimony,

there is an irreconcilable conflict in the evidence. The decision depends entirely upon which version of the facts is accepted. We said in Bailey v. Mahr, 199 Neb. 29, 255 N. W. 2d 866 (1977): "Equity cases are heard de novo by this court. In determining, however, the weight to be given the evidence, this court will consider the fact that the trial court observed the witnesses and their manner of testifying."

It is evident the trial court accepted the defendants' version of the facts. The trial court is in a much better position than this court, which must rely on a cold record, to resolve a dispute based upon conflicting testimony. The demeanor of the witnesses and the myriad nuances in their manner of testifying may make a decided difference as to what testimony should or should not be accepted by the trier of fact. On the record before us, we cannot say the trial court erred in reaching the conclusion he did on the facts.

Plaintiff leased the Ender property from 1954 to 1972. Dean Rasmussen, one of the plaintiff partners, actually lived on the Ender farm during that period. There is a direct conflict between his testimony and that of David Ender as to the removal of the 1947 fence, which is very material herein.

In our view of the record, plaintiff is claiming the disputed strip strictly as the grantee of Peter Rasmussen, on the theory that his adverse possession had ripened by 1957. The property was conveyed to plaintiff in 1965. The testimony of David Ender about giving permission to Dean Rasmussen is material in that it would indicate plaintiff did not make this same claim in 1965.

In attempting to harmonize the testimony from the cold record, we agree with the trial court, there had been two fences, one east and one west of the old road. The east fence, which the Ender children testified was on their side of the road, was located

wholly on their property. There is no evidence it was ever intended to be a boundary line fence. The trial court could have assumed this fence was in such a deteriorated condition by the early 1950's it could account for the testimony of plaintiff's witnesses that there was only one fence, the one built in 1947 by Peter Rasmussen. It is the location of that fence which is controlling herein.

If we accept the testimony of David Ender, the fence which witnesses for plaintiff remember had to be the section line fence erected in 1947 by Peter Rasmussen. This was the fence Peter Rasmussen testified he erected on the section line. If it was erected on the section line it could not possibly be the one plaintiff is now trying to establish as a boundary line.

We see no reason to disturb the fact findings made by the trial court. The judgment of the trial court is affirmed.

AFFIRMED.