IMPERIAL SERVICE CORPORATION, A NEBRASKA CORPORATION, AND CHILCO COMPANY, A NEBRASKA CORPORATION, APPELLEES, v. ENA PHIPPS, A SINGLE PERSON, ROGER L. PHIPPS, AND JANICE PHIPPS, HIS WIFE, APPELLANTS,
IMPLEADED WITH WILLIAM Q. JAEGER, J. CHARLES JAEGER, AND RAYMOND EARL JAEGER, DOING BUSINESS AS JAEGER BROTHERS, A COPARTNERSHIP, APPELLEES.
288 N. W. 2d 749

Filed February 26, 1980. No. 42668.

Daniel E. Owens, for appellants.

James M. McQuillan of McGinley, Lane, Mueller, Shanahan & McQuillan, for appellees Jaeger Brothers.

Leon C. Hines of Hines & Hines, for appellees Imperial Service and Chilco.

Heard before BOSLAUGH, McCOWN, CLINTON, and HASTINGS, JJ., and COLWELL, District Judge.

COLWELL, District Judge.

Defendants Phipps appeal from a decree quieting title to the northwest quarter of Section 5, Township 3 North, Range 40 West of the 6th P.M., Dundy County, Nebraska, in the plaintiffs. Plaintiffs' petition alleges their record title, possession and defendants' permissive use of the land. Defendants by cross-petition allege title by adverse possession. We affirm.

There is limited conflict in the evidence. The adverse claims of the parties arise from these circumstances. Section 6 abuts Section 5 on the west; it is all pastureland and there is a section line fence running north and south between the two tracts which has been in place for more than 35 years. The plaintiffs are the record titleholders of the northwest quarter of Section 5. Title was acquired by the Nichols Company, Inc., in 1946 and thereafter conveyed to Jaeger Brothers in 1974, who conveyed to plaintiffs. Title to the southeast quarter of Section 6 was acquired by Hansel Phipps and Ena Phipps, husband and wife, in 1952. Roger Phipps is their son. Hansel Phipps died in 1975. The northwest quarter of Section 5 is not circumscribed by a fence, but it is fenced in and used by defendants Phipps with other land owned by them in Section 5. The southeast quarter of Section 6 is not circumscribed by a fence, but it is fenced in and used by plaintiffs with other land owned by plaintiffs in Section 6. Both pastures were equal in value for pasturage purposes. Both parties maintained the fences on the tracts used by them and paid the taxes on the tracts to which they held record title. This arrangement for the exchange of use of land had been followed for

more than 35 years by the parties and their respective predecessors in title, according to the testimony of Gerald Ambrosek, a neighbor, who had been living in that area since 1941. The record is silent as to any agreement, lease, or exchange of consideration for such use. Defendants Phipps gave notice of their claim of title to the northwest quarter of Section 5 by letter from their attorney dated April 19, 1976, directed to the Imperial Service Corporation, advising that they claimed title by adverse possession since 1952. This suit followed.

"One who claims title by adverse possession must prove by a preponderance of the evidence that he has been in actual, continuous, exclusive, notorious, and adverse possession under claim of ownership for a full period of 10 years." Rasmussen Farms v. Gove, 201 Neb. 432, 267 N. W. 2d 764.

"Possession by permission of the owner can never ripen into title by adverse possession until after such change of position has been brought home to the adverse party." Weisel v. Hobbs, 138 Neb. 656, 294 N. W. 448. See, also, Jackson v. Eichenberger, 189 Neb. 777, 205 N. W. 2d 349.

"The claim of adverse possession is founded upon the intent with which the occupant had held possession, and this intent is ordinarily determined by what he has done in respect thereto. * * * it is the visible and adverse possession, with an intention to possess land occupied under a belief that it is the possessor's own, that constitutes its adverse character, and not the remote view or belief of the possessor." Purdum v. Sherman, 163 Neb. 889, 81 N. W. 2d 331.

The only issue here is whether the use and possession of the northwest quarter of Section 5 by defendants was either hostile or permissive.

The evidence of defendants Phipps, in support of their claim, in substance was: (a) The northwest quarter of Section 5 was fenced in with their land

and they had repaired and maintained the fence since 1952; (b) they had been in possession and using the northwest quarter of Section 5 for more than 10 years; (c) they had given notice to plaintiffs and their agents on several occasions to remove plaintiffs' cattle that had strayed onto the quarter section; and (d) in 1976 they had ordered plaintiffs' agents to leave the premises when they came upon the land for well-testing purposes.

The evidence of plaintiffs was: (a) They had also given notice to defendants Phipps to remove their cattle from the southeast quarter of Section 6 that had strayed thereon; (b) they had used the southeast quarter of Section 6, including its fence repair, for more than 35 years as an exchange-of-use arrangement; and (c) the use of the northwest quarter of Section 5 by Phipps and their predecessors in title was permissive, being a continuation of a mutual arrangement between adjoining landowners to keep the fence lines straight and to minimize fence repair.

In support of plaintiffs' claim the record shows that defendant Roger Phipps testified as to the use of the northwest quarter of Section 5, "* * * we was using theirs and they were using ours." Carl Nichols testified concerning a conversation he had with Hansel Phipps in the late 1950's concerning the use of the two quarter sections, "We just continued it. It was okay with him and it was okay with me."

Nichols and Hansel Phipps at one time agreed to exchange title to the quarter sections of land involved herein; however, they did not carry out this plan.

The land involved here is located in western Nebraska where large acreages of pastureland are commonplace. Plaintiffs' ranch includes more than 20,000 acres. Although the fencing and use of the two described pastures is unusual, it is not unique. The construction, maintenance, and repair of fences

in a straight line and the elimination of corner posts are both beneficial to ranchers. The parties here and their predecessors in title intended to and did exchange the use of the two pastures for their mutual convenience and benefit. There was no hostile use of the northwest quarter of Section 5 by the defendants.

The evidence clearly shows that the use of the northwest quarter of Section 5 by defendants Phipps and their predecessors in title was with the consent and permission of plaintiffs and their predecessors in title, and the defendants failed to prove their claim of title by adverse possession. The decree quieting title in the plaintiffs was correct.

AFFIRMED.