2004 SD 130

**Noelle DUBRAY, Appellee,**

v.

**SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES, Appellant.**

No. 23241.

Supreme Court of South Dakota.

Considered on Briefs Nov. 15, 2004.

Decided Dec. 15, 2004.

Neil Carsrud, Dakota Plains Legal Services, Mission, South Dakota, Attorney for appellee.

Lawrence E. Long, Attorney General, Kirsten E. Jasper, Assistant Attorney General, Pierre, South Dakota, Attorney for appellant.

ZINTER, Justice.

[¶ 1.] Noelle DuBray challenged a Department of Social Services (DSS) decision to place her name on the Central Registry of Child Abuse and Neglect. An administrative decision was entered in favor of DSS, and DuBray appealed to circuit court. The circuit court reversed, concluding that DuBray had been deprived of a meaningful due process hearing because DSS's case was based entirely upon three documents that were hearsay. DSS appeals. We affirm the circuit court.

### Facts and Procedural History

[¶ 2.] On August 12, 2000, the Rosebud Sioux Tribal police were dispatched to an apartment complex where DuBray lived. When the officers arrived at DuBray's unlocked apartment, they found her one-and-a-half year old child asleep in the bedroom. No one else was present. Law enforce-

ment took the child to the police department until DSS arrived. When DuBray was located, she was intoxicated. DuBray was arrested for child neglect and was later charged with underage consumption of alcohol and open container.

[¶ 3.] On July 21, 2002, DuBray was informed that DSS had "substantiated [a] report of abuse and neglect" by her because of the August 12, 2000 incident of leaving her daughter alone.[1] DuBray was also informed that she had 30 days to request an informal review of DSS's proposal to place her name on the Central Registry. DuBray requested and received an informal review. Her request to be removed from the Central Registry was denied because "the department [had] investigated and substantiated, by a preponderance of the evidence, a report of abuse or neglect." DuBray then requested a formal administrative hearing. In that formal proceeding, the hearing examiner admitted three documents into evidence over DuBray's hearsay objection. The documents were the sole evidence used to prove the alleged abuse and neglect. The documents were a DSS intake worksheet, a Rosebud Sioux Police Department's Offense/Incident report, and a DSS narrative outline of its involvement in this case. Based upon these three documents, the hearing examiner upheld DuBray's placement on the Central Registry.

[¶ 4.] DuBray appealed to circuit court. DSS later filed a motion to dismiss because DuBray failed to serve her brief in a timely manner. DuBray moved to excuse the default, alleging that an error occurred when her file was placed in Dakota Plains Legal Services' tickler system. The circuit court excused the default, finding that good cause had been established.

[¶ 5.] Following the submission of briefs and argument, the circuit court entered findings of fact and conclusions of law reversing the administrative decision. The circuit court noted that the sole evidence admitted at the administrative hearing was "hearsay and multiple hearsay." Considering this method of proof, the circuit court concluded that DuBray had been deprived of a meaningful due process hearing in which she could have cross-examined the witnesses against her.

[¶ 6.] DSS appeals raising three issues, which we consolidate into:

1. Whether DuBray was deprived of a meaningful due process hearing because DSS's sole evidence was inadmissible hearsay.

2. Whether the circuit court erred in excusing the default and not dismissing DuBray's appeal because her appellate brief was not timely.

## Analysis and Decision

### Hearsay

[¶ 7.] DSS contends that the circuit court erred in reversing the hearing examiner's decision to admit the three documents. DSS argues that the documents were either: (1) admissible under an Administrative Procedures Act statute (SDCL 1–26–19) that waives the rules of evidence when the documents are "of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs," or (2) were admissible under the business records (SDCL 19–16–10, Rule 803(6)) and public records (SDCL 19–16–

1. The incident that resulted in DuBray's placement on the Central Registry occurred on August 12, 2000. The record indicates that in February, 2002, DuBray authorized DSS to screen her name against the Central Registry for substantiated abuse and neglect reports. The record does not otherwise explain the two-year delay between the initial incident and the administrative review.

12, Rule 803(8)) exceptions to the hearsay rule.

▅▅▅▅ [¶ 8.] Evidentiary rulings are reviewed under an abuse of discretion standard. *State v. Milk*, 519 N.W.2d 313, 315 (S.D.1994) (citing *Zens v. Chicago, Milwaukee, St.Paul and Pac. R.R. Co.*, 479 N.W.2d 155, 159 (S.D.1991)). However, admission of evidence in violation of a rule of evidence is an error of law that constitutes an abuse of discretion. *Sawyer v. Farm Bureau Mut. Ins. Co.*, 2000 SD 144, ¶ 26, 619 N.W.2d 644, 651 (citation omitted).

[¶ 9.] The rules of evidence generally apply in administrative proceedings. SDCL 1–26–19 provides in relevant part:

▅▅▅ In contested cases:

(1) Irrelevant, incompetent, immaterial, or unduly repetitious evidence shall be excluded. The rules of evidence as applied under statutory provisions and in the trial of civil cases in the circuit courts of this state, or as may be provided in statutes relating to the specific agency, shall be followed. When necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not otherwise admissible thereunder may be admitted except where precluded by statute if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs. Agencies shall give effect to the rules of privilege recognized by law. Objections to evidentiary offers may be made and shall be noted in the record. Subject to these requirements, when a hearing will be expedited and the interests of the parties will not be prejudiced substantially, any part of the evidence may be received in written form;

(2) A party may conduct cross-examinations required for a full and true disclosure of the facts;

. . . .

Thus, unless it falls within an exception, hearsay is not admissible in administrative proceedings. *Dail v. South Dakota Real Estate Commission*, 257 N.W.2d 709, 712 (S.D.1977).

▅▅▅ [¶ 10.] DSS first argues that the general exception in the foregoing provision of the Administrative Procedures Act applies. "To come within [that] exception, hearsay must meet a two-pronged test: It must be probative of a fact not reasonably susceptible of proof under normal rules, and it must be of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Dail*, 257 N.W.2d at 712; SDCL 1–26–19. However, on appeal, DSS only addresses the second prong, arguing that "the three exhibits were a type of document commonly relied upon by reasonably prudent persons in the conduct of their affairs." DSS fails to even address the first prong, requiring a showing that the hearsay must be probative of a fact not reasonably susceptible of proof under normal rules. Because this first prong disposes of this issue, we address it first.[2]

2. Because DSS did not satisfy the first foundational prong, we usually would not address the second prong requiring that a reasonably prudent person would rely upon this type of evidence in the conduct of their affairs. We do, however, note that DSS failed to establish that two of the three documents were of a type commonly relied upon by reasonably prudent people in the conduct of their affairs. No such showing was made with respect to the intake worksheet and the narrative outline. Moreover, the only showing made with respect to the police report was that *DSS relies* on police reports "depending upon the circumstances."

[¶ 11.] At the hearing, Mimi Olson, a DSS supervisor, provided the only foundational testimony for the exhibits. She indicated that a social worker, Forest Keefe, prepared the intake worksheet and the narrative outline, while the Rosebud Police Department prepared the investigative report. However, Olson failed to establish that the facts within the exhibits were not reasonably susceptible of proof under the normal rules of evidence. While there was testimony that Keefe was no longer employed by the Department, there was no evidence that either Keefe or the investigating police officer were unavailable to testify. Because DSS failed to make the foundational showing that the hearsay was probative of facts not reasonably susceptible of proof under normal rules, the exhibits were erroneously admitted under the Administrative Procedures Act exception in SDCL 1–26–19.

[¶ 12.] We also note that there is a third Administrative Procedures Act requirement that DSS failed to meet. SDCL 1–26–19 provides that "subject to" the two foundational prongs, written evidence may be submitted if the interests of the parties are not substantially prejudiced. DSS argues there was no prejudice because "the admission of the exhibits in their written form would have been identical to the testimony that the police officer or social worker would have presented." DSS also argues that DuBray was not prejudiced because she was given the opportunity to rebut the documentary evidence. However, both arguments fail to acknowledge that the use of hearsay constituted substantial prejudice because it deprived DuBray of any opportunity to confront and cross-examine the only witnesses who made substantive allegations of abuse and neglect against her. Therefore, DSS also failed to satisfy this prejudice

test, and SDCL 1–26–19 did not authorize admission of the documents.

[¶ 13.] Alternatively, DSS argues that the exhibits were admissible under the rules of evidence. DSS first contends that all three exhibits "clearly fall within the business records exception to the hearsay rule. . . ." We disagree.

[¶ 14.] The business records exception, found in SDCL 19–16–10 (Rule 803(6)), provides:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, is not excluded by § 19–16–4, [(Rule 802),] even though the declarant is available as a witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this section includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

[¶ 15.] Prior to use of the business records exception, a proper foundation must be made through the "testimony of the custodian or other qualified witness." *Id.* "The custodian of the records . . . 'need not be in control of or have individual knowledge of the particular . . . records . . . , but need only be familiar with the [business's] recordkeeping practices.' " *United States v. Weinstock*, 153 F.3d 272, 276 (6thCir.1998) (citation omitted). However, "[a] proper foundation consists of *testimony* 'that a document has been pre-

pared and kept in the course of a regularly-conducted business activity.'" *Brown,* 480 N.W.2d at 763 (citations omitted) (emphasis in original).

■ [¶ 16.] In this case, the foundational testimony for the intake worksheet was absent. Olson testified that the intake worksheet was prepared by Keefe, and that Keefe was an investigative social worker for the Department. Olson also testified that, as district supervisor, she had access to all the files that were assigned to the workers by the supervisors, and that Olson supervised Keefe's supervisor. However, that was the extent of the foundational support for this proffered business record.

[¶ 17.] Most troubling here is the fact that this foundational showing omitted the core elements of the exception. Olson never testified that the preparation of the intake worksheet was a routine practice of DSS or that the worksheet was made in the regular course of business. *See Weinstock,* 153 F.3d at 276 (noting that the theory behind the business records exception is that a person preparing a record has an incentive to be accurate, therefore "[r]ecords prepared in the course of regularly conducted business activity are particularly reliable...."). Even though we may surmise that it is common practice for DSS to prepare some type of intake worksheet, DSS was required to provide an evidentiary foundation that *this worksheet* had been prepared and kept in the ordinary course of business. *See Brown,* 480 N.W.2d at 763 (citations omitted). Because DSS failed to provide that foundation, the intake worksheet was not admissible under the business records exception. *See United States v. Freidin,* 849 F.2d 716, 723 (2dCir.1988) (stating that a memorandum was inadmissible under the business records exception because there was no testimony that it was made in the "regular

practice" of business); *Collins v. Kibort,* 143 F.3d 331, 337 (7thCir.1998) (stating that hospital bills were inadmissible because there was no testimony as to the hospitals regular business practice in maintaining billing records).

■ [¶ 18.] The narrative outline and police report were also foundationally deficient. Olson testified that the narrative outline detailed the investigation, the interviews, and the contacts that Keefe made as the social worker in this case. Although Olson did testify that this narrative outline was prepared in the ordinary course of business, we believe that a social worker's investigative report of an abuse and neglect charge is just like the narrative portion of an investigative police report. Both are generally inadmissible because of the inherent unreliability of the ultimate sources of information. *See Brown v. State,* 274 Ga. 31, 549 S.E.2d 107, 109 (2001) (concluding that the trial court erred in allowing "a police officer to read into evidence the narrative portion of a police report of which he had no personal knowledge and did not prepare").

[¶ 19.] As the Georgia Supreme Court noted, investigating allegations of criminal conduct is unlike the process used to collect the information that is admissible as a business record. *Id.* Rather,

[T]he information collected by police officers frequently consists of circumstances that are neither easily definable nor entirely concrete. Unlike the business world where objective information may be gathered in the stream of commerce, police work is often heavily influenced by the beliefs, impressions, and, at times, hunches of the investigating officer. It is because of these difficulties that police report narratives do not fit easily within the business records exception to the hearsay rule. Thus, while the narrative portion of a police

report may meet the technical requirements of the statute, it does not have the reliability inherent in other documents that courts have traditionally considered to be business records. We conclude that the narratives contained in police reports generated in connection with police investigations are not the appropriate subject of an exception to the hearsay rule.[3]

*Id.* The Georgia Supreme Court further observed that:

> Were we to conclude that the police report narrative in this case were admissible, serious public policy implications would result.... [A] major alteration in the administration of our system of criminal prosecutions may result. Because almost all prosecutions are based on incidents in which witness statements are taken and those, along with police officers' statements, are made part of some police agency's reporting system, it is reasonable to expect that in the future it might be the rare case in which the witnesses actually come to court and testify.

*Id.* at 110–111 (citation omitted). A further rationale for excluding police reports (and the analytically similar abuse and neglect investigative reports) "is that the statements of bystanders that police officers incorporate within the record are typ-

ically not made pursuant to a routine business duty." *Reeves v. King,* 534 So.2d 1107, 1114 (Ala.1988) (citation omitted). The statements made "by witnesses to a crime and recorded by officers are not made in the regular course of the witness' business," resulting in a lack of reliability. *State v. Bertul,* 664 P.2d 1181, 1184 (Utah 1983).

[¶ 20.]   In this case, Olson testified that the narrative outline "talks concisely about the investigation, the interviews, and the contacts that were made by the social worker." A review of the outline reflects that it contains statements from people other than DuBray and Keefe, such as DuBray's mother and the mother of the babysitter that DuBray alleges was in charge of the child on the night in question. Both of these individuals have far different motives in reporting the facts of this incident than people reporting regularly conducted business activities.

[¶ 21.]   We therefore conclude that the DSS narrative outline was not admissible as a business record. The foregoing discussion also excludes the investigative police report. *See also, Nettles v. Bishop,* 289 Ala. 100, 266 So.2d 260, 264 (1972) (agreeing that the settled rule is that the report of an investigating officer is not admissible as it is hearsay).[4]

---

3.  Like the Georgia Supreme Court, we also:

> "... do not address the admissibility of other information not contained in the narrative of the police report. Certain information, such as the time, date and location of an arrest, may be properly admitted under the business records exception under our analysis. Other information that requires the reporting officer to make a conclusion or express an opinion is not admissible. However, since only the narrative portion was read into evidence in this case, we need not address this issue further." *Id.* at 110, n. 2.

4.  "Several states have prohibited or strongly disapproved the admission of police reports under the business records exception to the hearsay rule when offered by the state. *Reeves v. King,* 534 So.2d 1107, 1114 (Ala. 1988); *Wilson v. State,* 756 P.2d 307, 312 (Alaska App.1988); *Wallin v. Ins. Co. of North America,* 268 Ark. 847, 596 S.W.2d 716 (1980); *Bolin v. State,* 736 So.2d 1160, 1167 (Fla.1999); *People v. Gayton,* 293 Ill.App.3d 442, 228 Ill.Dec. 229, 688 N.E.2d 1206 (1997); *Bacher v. State,* 686 N.E.2d 791, n. 4 (Ind.1997); *State v. Smith,* 594 So.2d 467, 476 (La.Ct.App.1991); *Solomon v. Shuell,* 435 Mich. 104, 457 N.W.2d 669 (1990); *Snyder v. Portland Traction Co.,* 182 Or. 344, 185 P.2d

[¶ 22.] DSS alternatively argues that the police report[5] is admissible under the public records exception found in SDCL 19–16–12 (Rule 803(8)), which provides:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth:
>
> (1) The activities of the office or agency; or
>
> (2) Matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel; or
>
> (3) In civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, are not excluded by § 19–16–4, even though the declarant is available as a witness, unless the sources of information or other circumstances indicate lack of trustworthiness.

"Public records will be admitted 'unless the sources of information or other circumstances indicate lack of trustworthiness' as set forth in SDCL 19–16–12 [Rule 803(8) ]." *State ex rel. Maeschen v. Wittstruck,* 377 N.W.2d 137, 139 (S.D. 1985).

[¶ 23.] DSS relies on *State v. Beynon,* 484 N.W.2d 898, 905 (S.D.1992), for the proposition that police reports are admissible as public records. However, *Beynon* only permitted the use of police reports in rebuttal after they had been extensively referred to by the opposing party and it was necessary to refer to them under the doctrine of completeness. *Id.* at 904–905. Absent this use, *Beynon* noted that police reports are not generally admissible under the public records exception "against an accused in a criminal case as they constitute inadmissible hearsay." *Id.* at 905. *Beynon* further stated "that the exception [could] not be used by prosecutors in order to prove their case in chief by means of a report rather than by bringing in the officer to testify." *Id.* at n9 (citations omitted). Consequently, *Beynon* does not support admission of the police report under the public records exception.

[¶ 24.] DSS further suggests admissibility of all documents because DuBray did not provide evidence indicating that the exhibits were not trustworthy. However, DSS fails to recognize that, "[g]enerally, records are shown to be reliable in the course of establishing the elements of the exception," 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 803.08[6][a] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2004). In this case, DSS, as the proponent of the evidence, bore the burden of establishing the elements of the exceptions, but failed to do so. Therefore, DSS, as the proponent of the evidence, failed in *its* burden of establishing that documents were trustworthy and admissible as business and public records.

[¶ 25.] DSS finally argues that even if there was error in admitting the documents, a reversal is not required. DSS

563 (1947); *State v. Bertul,* 664 P.2d 1181, 1184 (Utah 1983). *See also Montgomery v. U.S.,* 517 A.2d 313, 316 (D.C.1986) (distinguishing between police reports that are prepared in the anticipation of litigation and those that merely record routine facts that are used primarily for internal administrative purposes)."

*Brown,* 549 S.E.2d at 110, n. 3.

5. DSS has not argued that the intake worksheet and the narrative outline are admissible as public records. We therefore decline to consider that question.

points out that the party asserting error must also show that their substantial rights were affected. *Sawyer*, 2000 SD 144, ¶ 27, 619 N.W.2d at 651 (citation omitted). However, as was previously discussed, DuBray was substantially prejudiced by the admission of hearsay because it completely deprived her of the ability to confront and cross-examine the witnesses against her. We agree with the trial court that the admission of such evidence deprived DuBray of her fundamental right to a meaningful due process hearing. She was therefore prejudiced.

### Discretion to permit untimely briefs

[¶ 26.] DSS asserts that the trial court erred in granting relief from DuBray's default in filing her opening brief. DSS argues that the briefing time limits in SDCL 1–26–33.2 are mandatory and leave no room for a trial courts discretionary relief from a default. We disagree.

[¶ 27.] DuBray served her notice of appeal on January 17, 2003. On January 22, 2003, DuBray filed a request for transcript of the administrative hearing, and she was provided the transcript on February 13, 2003. Pursuant to SDCL 1–26–33.2, DuBray had thirty days after service of the transcript in which to serve her brief.[6]

[¶ 28.] However, DuBray failed to meet this deadline. On April 22, 2003, DSS filed a motion to dismiss the appeal because of DuBray's failure to timely serve her brief. On April 23, 2003, DuBray filed a motion

for relief from default. After a hearing on July 3, 2003, DuBray was granted relief from the default. She was also ordered to file her brief no later than July 31, 2003.

[¶ 29.] Thus, DuBray timely filed her notice of appeal, but she failed to timely file her brief and that default was excused for good cause shown. This Court has previously stated that under our analogous rules of appellate procedure "only failure to timely serve and file the notice of appeal is jurisdictionally fatal to an appeals validity, while lesser omissions may be subject to sanctions." *Western States Land Cattle Co., Inc., v. Lexington Ins. Co.*, 459 N.W.2d 429, 432 (S.D.1990). DSS has advanced no reason or authority to adopt a different rule for administrative appeals. Therefore, we conclude that because the failure to timely file a brief is not jurisdictional, the circuit court had discretion to excuse the default.

[¶ 30.] DSS finally complains that DuBray was given 135 days to file her brief, while DSS had only the statutory thirty days. We note however, that the hearing to consider DuBray's motion for relief from default was not held until July 3, 2003, almost four months after DuBray moved to excuse the default. Furthermore, following the hearing, DuBray's brief was not ordered to be filed until July 31, 2003. Thus, while 135 days may have expired from the original date that DuBray's brief was due, a prompt motion to

---

6. SDCL 1–26–33.2 provides:

   Unless otherwise ordered by the circuit court, the appellant shall serve a brief within thirty days after the delivery of the transcript of the contested case hearing to counsel for the parties or to the parties if unrepresented by counsel or within thirty days after the agency record is transmitted to the circuit court pursuant to § 1–26–33, whichever event occurs later. The appellee shall serve a brief within thirty days after

   the service of the brief of appellant, or in the case of multiple appellants, within thirty days after service of the last appellant's brief. The appellant may serve a reply brief within ten days after service of appellee's brief, or in the case of multiple appellees, within ten days after service of the last appellee's brief. Pursuant to § 15–6–5(d), briefs may not be made a part of the record.

excuse the default was filed, almost four months of the delay occurred in conducting a hearing on the motion, and DuBray's brief was ultimately filed as ordered by the court. Therefore, this is not a case of a 135 day unexplained failure of an appellant to file a brief.

[¶ 31.] Affirmed.

[¶ 32.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.