#25336-a-SLZ

**2010 SD 68**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

RUSTY JOHNSON,                                        Plaintiff and Appellee,

 v.

KELA O'FARRELL and
CORY O'FARRELL,                               Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE THIRD JUDICIAL CIRCUIT
GRANT COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DAVID R. GIENAPP
Judge

\* \* \* \*

JOHN D. KNIGHT of
Gunderson, Evenson, Boyd,
  Knight & Stoltenburg, LLP
Clear Lake, South Dakota                     Attorneys for plaintiff
                                             and appellee.


LARRY M. VON WALD
Beardsley, Jensen &
  Von Wald, Prof. LLC
Rapid City, South Dakota                     Attorneys for defendants
                                             and appellants.

\* \* \* \*

ARGUED FEBRUARY 17, 2010

OPINION FILED **08/11/10**

#25336

ZINTER, Justice

[¶1.] Rusty Johnson brought this action for negligence and assault against Kela O'Farrell, the owner of a bar, and her husband, Cory O'Farrell, an employee (defendants). Johnson alleged that he suffered personal injuries when Cory threw him against a wall in the bar. At trial, Johnson introduced a police report that included a deputy sheriff's interview of the defendants on the night of the incident. The report was admitted over defendants' foundation and hearsay objections. The jury returned a verdict in favor of Johnson. Defendants appeal arguing that the report was inadmissible hearsay. We affirm.

*Facts and Procedural History*

[¶2.] On the evening of July 31, 2004, Rusty Johnson, his girlfriend Kim Pinkert, and some of their friends went to a bar in Marvin, South Dakota. Kela O'Farrell served Johnson a beer. According to Kela, she then told Johnson that she would like him to leave when he finished his beer. After Kela spoke to Johnson, Cory O'Farrell, who was seated at the bar, asked Johnson "to go outside." Johnson testified that once outside, Cory told Johnson that he was not welcome and that Johnson and his friends should leave. It is undisputed that Johnson did not argue with Cory, and Johnson was cooperative. Johnson went back inside and told Pinkert that they needed to leave.

[¶3.] There is a sharp conflict as to what happened next. According to Johnson, as they were leaving the bar, Cory "tackled" Johnson from behind and threw him across the bar into a wall. Cory, however, testified that Johnson approached Cory and stood behind him. Cory testified that he then stood up,

turned around, and "gently grabbed [Johnson's] arm to walk him to the door[.]" According to Cory, Pinkert then got between Cory and Johnson, and Johnson grabbed Cory by his shirt. Cory testified that he and Johnson then spun around, and as Cory pushed Johnson away, Johnson "lost his balance," hit the wall, and fell.

[¶4.]    Similar to Cory, Kela testified that Pinkert got between Cory and Johnson, and Johnson grabbed Cory by his shirt. Kela testified that she then grabbed Pinkert by her belt and pulled Pinkert out from between Johnson and Cory. According to Kela, at this point Cory was "escort[ing] [Johnson] toward the door" and Johnson was holding onto Cory's shirt. Kela indicated that Cory then pushed Johnson away, and Johnson "staggered" and "fell and hit the bottom of the wall."

[¶5.]    Grant County Deputy Sheriff Ben Koens investigated the incident that evening. Koens's report contained Kela's and Cory's contemporaneous statements given to Koens. The portion of the report in issue[1] states:

> This officer asked the bartender [Kela] what took place. She stated that Cory O'Farrell walked over to Rusty Johnson and told him to leave the bar. She stated the next thing she saw, Cory O'Farrell had thrown Rusty against the wall. She stated that Rusty fell on the floor. . . . This Officer asked [Cory] what started the fight. [Cory] stated that Rusty used to go with his girlfriend, and he didn't want him in the bar. [Cory] stated that he did throw him, but he didn't know [how] he got hurt.

[¶6.]    During Johnson's case-in-chief, Johnson called Grant County Sheriff Michael McKernan. McKernan testified that he was "somewhat" familiar with the

---

1.    The report has check boxes categorizing persons as subjects and victims. The report categorized Cory as the "subject" and Johnson as the "victim." Although defendants also object to this notation, the reference to subjects and victims was never argued to the jury. Considering all of the evidence, we see no reversible error arising from admission of this portion of the report.

incident, but that he had not investigated it. Johnson then laid a foundation for Koens's report under the business records exception to the hearsay rule. Sheriff McKernan testified that Koens's report was "a routine part of doing an investigation," and that it was a record "kept in the ordinary course of business at the sheriff's office." Defendants *voir dired* McKernan for purposes of an objection. McKernan initially indicated he could not verify the accuracy of Koens's report without contacting Koens.

[¶7.]    Defendants objected to the admission of Koens's report on the grounds of foundation and hearsay. In initially sustaining these objections, the court stated: "Basically, what I'm going to do is sustain the objection to the admissibility of this document at this time and [I] indicated to counsel at the bench that the reasons for my sustaining it may be overcome subsequently in this trial and might not. But I'm not receiving it at this time." After this ruling, Johnson's counsel asked further questions to establish a business records foundation for the report. McKernan ultimately testified that he believed the report was true and accurate as a result of a conversation with Koens.

[¶8.]    Notwithstanding the additional foundation, the report was not offered again until Johnson concluded his case, the defense started their case, and counsel for the defendants examined Cory as a witness. During Johnson's cross-examination of Cory, Johnson asked Cory about the statements he had made to Deputy Koens on the night of the incident:

> Q:    Did you tell [Deputy Koens] that Rusty [Johnson] used to go with your girlfriend and you didn't want him in the bar?
> A:    I might have.

> Q: Did you tell him that you did throw [Johnson] but you didn't know how he got hurt?
> A: I don't recall.

At this point, Johnson offered Koens's police report into evidence. Defendants renewed their foundation and hearsay objections. The circuit court admitted the report under the authority of *State v. Beynon,* 484 NW2d 898 (SD 1992). Johnson's counsel then impeached Cory using his statements in Koens's report:

> Q: [C]ould you read for me . . . what Officer Koens says that you said?
>     * * *
> A: [Cory] stated that he did throw [Johnson] but [Cory] didn't know how [Johnson] got hurt.
>     ***
> Q: Well, did you say it?
> A: I don't recall.
> Q: Are you suggesting that [Deputy Koens] made it up?
> A: I'm not saying that. Apparently there could have been stuff left out if I didn't sign the statement.

[¶9.] Johnson also used Koens's report to cross-examine Kela following her direct examination. As previously mentioned, Kela had testified that "Cory had originally had him by the arm to escort him towards the door and Rusty had him by the shirt. And so Cory turned like that and pushed him that way, which would have been towards the wall." She had further testified that Johnson "lost his balance," "staggered," and then "hit the bottom of the wall." On cross-examination, Johnson's counsel impeached Kela using Koens's report:

> Q: Okay. And [Deputy Koens] asked you what took place; is that right?
> A: No. I don't recall that.
> Q: But at least that's what [Deputy Koens] says he did?
> A: I don't recall.
> Q: Okay. In [Deputy Koens's] report where he says I asked the bartender, this officer asked the bartender what took place. Can you tell the jury what he says you responded?

A:    She stated that Cory O'Farrell walked over to Rusty Johnson and told him to leave the bar. She stated the next thing she saw, Cory had thrown Rusty against the wall. She stated that Rusty fell on the floor.

Q:    And so five years later are you telling the jury that you didn't tell him that Cory O'Farrell walked over to Rusty Johnson and told him to leave the bar, and that the next thing you saw Cory had thrown - - excuse me. That Cory had thrown Rusty against the wall?

A:    I don't believe I said that, no.

* * *

Q:    And if so if that's accurate, if Rusty, excuse me, if Cory walked over to Rusty and the next thing you saw was Cory threw Rusty into the wall, if that part is accurate, then what you are saying today isn't accurate, is it?

A:    What I'm saying today is what happened.

[¶10.]    In closing arguments, Johnson's counsel read portions of defendants' statements in Koens's report to attack defendants' credibility. Counsel argued:

> I think that one thing is pretty clear about this case and that is that one side is not being completely truthful or telling the truth. . . . And to start out with I want to just point out to you again what the deputy reported in his report[.] . . . What happened was exactly what [defendants] told the officer that night. Cory got up, came over to [Johnson], grabbed him and threw him across the bar into the wall. . . . For them to come in here now and say that either it didn't happen or they don't remember telling the deputy, that makes no sense. . . . [U]nfortunately for them they already gave their truthful statements and they are stuck with those, they don't get to come in here and tell you something different. Remember when I asked Kela the last question if what's true in the report, if it's true what happened in the report, then that's inconsistent with your story, isn't it? She said yes. Her version of what happened can't be true if this is true.[2]

---

2.    Johnson's counsel elaborated that Kela and Cory "weren't being truthful about the story they told [the jury]" in light of the statements they gave to Deputy Koens. Regarding the defendants' contradictory story at trial that Johnson was so intoxicated he lost his balance and fell, Johnson's counsel noted that defendants did not "have that version of the story that night." He continued:

(continued . . .)

[¶11.]     Following closing arguments, the jury returned a verdict in favor of Johnson and awarded damages in the sum of $68,000 plus pre-judgment interest. Defendants appeal claiming prejudicial error in the admission of the police report.

*Decision*

[¶12.]     "We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard." State v. Williams, 2006 SD 11, ¶ 8, 710 NW2d 427, 430. Although "admission of evidence in violation of a rule of evidence is an error of law that constitutes an abuse of discretion," *DuBray v. S.D. Dep't of Social Serv.*, 2004 SD 130, ¶ 8, 690 NW2d 657, 661, admitting evidence on an incorrect ground will be affirmed if the evidence was admissible on a different ground. *See* Robeson v. State, 285 Md 498, 502, 403 A2d 1221, 1223 (1979) ("[W]here the record in a case adequately demonstrates that the decision of the trial court [admitting evidence] was correct, although on a ground not relied upon by the trial court and perhaps not even raised by the parties, an appellate court will affirm. In other words, a trial court's decision may be correct although for a different reason than relied on by that court.").[3]

_____

(. . . continued)

> They hadn't had time to think of that. They hadn't had time to come up with an excuse for why Rusty broke his leg. That's what happened later, after they gave the story. Later they decide, oh, we might have a problem here, we better figure out what we can say happened that he broke his leg, now let's blame Rusty for that.

3.     *See also* United States v. Ledford, 443 F3d 702, 707 (10thCir 2005) ("[W]e should hardly be warranted in reversing for the admission of evidence simply

(continued . . .)

[¶13.]     In admitting Koens's report, the circuit court cited *State v. Beynon*. In *Beynon*, we affirmed the admission of police reports because part of the reports had been extensively referred to by the opposing party and the entire reports were necessary under the doctrine of completeness.[4] 484 NW2d at 904-05. We also observed that the reports were not used to prove the truth of the matter asserted. "Instead, [the reports] were [non-hearsay] introduced to rehabilitate [the witness] and to show the jury [that the witness's] testimony was indeed substantially consistent with what he wrote in his report and statement." *Id.* at 905. In the case we consider today, no portion of the report had been previously admitted. Therefore, the report was not admissible under the doctrine of completeness. Furthermore, Koens's report was not offered as non-hearsay prior consistent statements used to rehabilitate a declarant. The report was used to impeach and as substantive evidence of what caused Johnson's injuries. Therefore, the circuit court erred in relying upon *Beynon* as authority for admitting Koens's report.

[¶14.]     Defendants point out *Beynon* also stated that, generally, police reports are inadmissible hearsay. *Id.* at 905. Defendants further note that in *DuBray* we

---

(. . . continued)

because the judge did not place his ruling on the ground that would most readily have supported it.") (citations omitted); United States v. Williams, 837 F2d 1009, 1013 (11thCir 1988) (considering erroneous offer of hearsay on business records exception, but affirming on admission under party opponent rule because admission served the same purpose; i.e., to prove the truth of the matter asserted*).

4.     SDCL 19-9-13 (Rule 106) provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded

(continued . . .)

indicated that, generally, the narrative portion of a police report does not meet the business or public records exceptions to the hearsay rule. 2004 SD 130, ¶¶ 21, 23, 690 NW2d at 664-65. Therefore, defendants contend the circuit court erred in admitting Deputy Koens's report over their hearsay objection.

[¶15.]     "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." SDCL 19-16-1(3) (Rule 801(c)). This case involves two levels of out-of-court statements that, when contained in a written report, become hearsay within hearsay. Deputy Koens's report itself is first-level-reporter hearsay: it is Koens's out-of-court statement of what he recorded the defendants stating to him. The defendants' statements to Koens are second-level-witness hearsay: they are the defendants' substantive statements made to Koens at the time of the incident. To be admissible without Koens's testimony at trial, each level must come within a hearsay exception. SDCL 19-16-36 (Rule 805) provides that "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in §§ 19-16-5 to 19-16-35, inclusive." *See also* United States v. Dotson, 821 F2d 1034, 1035 (5thCir 1987) (concluding that, for purposes of Rule 805 analysis, each level of hearsay in a police report detailing the statement of a witness must be non-hearsay or meet a hearsay exception).

---

(. . . continued)

    statement which ought in fairness to be considered contemporaneously with it."

[¶16.] Although SDCL 19-16-36 (Rule 805) requires that each level meet a hearsay "exception" in sections 19-16-5 to 19-16-35, "[f]or the purposes of the hearsay-within-hearsay principle expressed in Rule 805, 'non-hearsay' statements under rule 801(d) [admissions] . . . should be considered . . . as the equivalent of . . . an exception to the hearsay rule." *Dotson,* 821 F2d at 1035. *See also* 5 Federal Evidence § 8:136 (3d ed) (2009) (stating that it is generally recognized that "each statement in the chain must fit 'an exception,' and this term should be read also to reach statements that qualify as 'not hearsay' under Rule 801(d) and statements offered for nonhearsay purposes") (citing United States v. Lang, 589 F2d 92, 98-99 n2 (2dCir 1978) (concluding that the logic of Rule 805 would apply to an admission); United States v. Portsmouth Paving Corp., 694 F2d 312, 321-23 (4thCir 1982) (considering non-hearsay statements by agents and co-conspirators); United States v. Calabrese, 2008 WL 4274453 (NDIll 2008) (noting the term "exception" in Rule 805 should be read to include statements that qualify as "not hearsay" under Rule 801(d)).

[¶17.] Therefore, with respect to police reports, the report may be admitted if the declarant officer's statement meets the business record exception and the declarant witness's statement qualifies as a non-hearsay admission. Although not admitting the report in the case, a frequently cited federal district court opinion describes the analysis:

> Since the report was made in the ordinary course of the under-sheriff's business, and it was his business to record the defendant's statement, the report with the statements were admissible under [the business record exception] only to show that these statements were in fact made by the defendant if that is relevant. Once it is established that the defendant made the

> statement (a statement inconsistent with her position at trial), the substantive contents of the statement are admissible, not under [the business record exception] but rather under the admission exception to the hearsay rule.

Yates v. Bair Transp., Inc., 249 FSupp 681, 685 (SDNY 1965).  Thus, we must first determine whether Deputy Koens's report containing the defendants' statements qualifies for admission under the business record exception to the hearsay rule.

*First- Level Hearsay:  The Business Record Exception -- SDCL 19-16-10 (Rule 803(6))*

[¶18.]          SDCL 19-16-10 (Rule 803(6)), the business records exception, provides in part:

> A . . . report . . . of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . report . . . , all as shown by the testimony of the custodian or other qualified witness, is not excluded by § 19-16-4, even though the declarant is available as a witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

"Prior to use of the business records exception, a proper foundation must be made through the 'testimony of the custodian or other qualified witness.'"  *DuBray,* 2004 SD 130, ¶ 15, 690 NW2d at 662 (citation omitted).  "The custodian of the records . . . 'need not be in control of or have individual knowledge of the particular . . . records . . ., but need only be familiar with the [business's] recordkeeping practices.'"  *Id.* (citing United States v. Weinstock, 153 F3d 272, 276 (6thCir 1998)).  "[A] proper foundation consists of testimony 'that a document has been prepared and kept in the course of a regularly-conducted business activity.'"  *Id.* (citing State v. Brown, 480 NW2d 761, 763 (SD 1992)).  Sheriff McKernan provided that foundation for the

admission of Koens's report. McKernan testified that Deputy Koens's preparation of the report was a routine part of doing an investigation and that the report was a record kept in the ordinary course of business in his office.

[¶19.] Defendants, however, point out that *DuBray* generally prohibited the admission of narrative police investigatory reports. The holding in *DuBray* was that the narrative portion of a police report meets the technical requirements of a business record, but police reports are "generally inadmissible because of the inherent unreliability of the ultimate sources of information."[5] 2004 SD 130, ¶ 18, 690 NW2d at 663. They are also inadmissible because "the statements of bystanders that police officers incorporate within the record are typically not made pursuant to a routine business duty." *Id.* ¶ 19, 690 NW2d at 664. Thus, *DuBray* only prohibited use of the business record exception to substantively prove the contents of the report. *DuBray* did not consider admission of a police report to merely prove first-level-reporter hearsay; i.e., to prove that the officer recorded a statement of a witness.

[¶20.] Admission of police reports for this limited purpose is in accord with Fed. R. Evid. 803(6). The advisory committee note to Rule 803(6) specifically states that when information from witnesses is recorded in a police report, the police

---

5. McKernan testified that Koens also interviewed Johnson, but McKernan did not have a copy of that interview. Therefore, defendants argue that Koens's report "lacked trustworthiness." Koens's report, however, makes no mention of an interview with Johnson. The report only mentions that Koens "got a written statement from [Johnson's] girlfriend, Kimberly Pinkert." Additionally, we fail to see how Sheriff McKernan's failure to possess a copy of Koens's interview of Johnson affects the trustworthiness of Koens's separate report containing statements of the defendants.

report qualifies under the business record exception but the substantive statements do not because "the officer qualifies as acting in the regular course but the informant does not." Fed. R. Evid. 803(6) advisory committee's note. Thus, it is uniformly held that where the technical requirements of Rule 803(6) are met, a police report is admissible as a business record at the reporter level, as distinguished from the witness level. *See* Colvin v. United States, 479 F2d 998 (9thCir 1973); Smith v. Spina, 477 F2d 1140 (3dCir 1973); Gray v. L.J. Navy Trucking Co., 475 F2d 545 (6thCir 1973); United States v. Halperin, 441 F2d 612 (5thCir 1971); United States v. Burruss, 418 F2d 677 (4thCir 1969); United States v. Shiver, 414 F2d 461 (5thCir 1969); Lindberg v. Short Line, Inc., 399 F2d 482 (1stCir 1968); United States v. Graham, 391 F2d 439 (6thCir 1968); Juaire v. Nardin, 395 F2d 373 (2dCir 1968); Bowman v. Kaufman, 387 F2d 582 (2dCir 1967); Hawkins v. Gorea Motor Express, Inc., 360 F2d 933 (2dCir 1966); Bridger v. Union Ry. Co., 355 F2d 382 (6thCir 1963);Gordon v. Robinson, 210 F2d 192 (3dCir 1954); Gencarella v. Fyfe, 171 F2d 419 (1stCir 1948); United States v. Smith, 521 F2d 957 (DCCtApp 1975); *Yates,* 249 FSupp 681; Levin v. Green, 106 A2d 136 (DC 1954). *See generally* 31 ALR Fed 457 § 7.

[¶21.]     Like virtually all other courts, we therefore conclude that the business record exception applies to Koens's first-level hearsay; i.e., to prove that the report contained Koens's statements of what he recorded. We now must determine whether defendants' statements in the report were admissible at the second level; i.e., to substantively prove the statements. "[W]hile such hearsay in a business record is not admissible under the business record exception, the hearsay is

admissible if it falls within any other exception[,] for instance . . . an admission."

*Smith,* 521 F2d at 964.

*Second-Level Hearsay: Admission of Party Opponent – SDCL 19-16-3(1) (Rule 801(d)(2)(1))*

[¶22.]    SDCL 19-16-3(1) (Rule 801(d)(2)(1)) provides that an admission offered

against a party is not hearsay: "A statement is not hearsay if it is offered against a

party and is: [h]is own statement, in either his individual or a representative

capacity[.]" "It is not necessary that the out-of-court statement be against the

declarant's interest at the time it is made. The statement must be adverse to the

party's case at the time of trial and be offered against the party[.]" Fritzmeier v.

Krause Gentle Corp., 2003 SD 112, ¶ 72, 669 NW2d 699, 712 (Sabers, J., concurring

specially) (citing John W. Larson, South Dakota Evidence, 801.3 (1991)). In such

cases:

> Any prior statement of a party is admissible if it is offered
> against the party at trial. The test is whether the statement is
> being offered at trial for a purpose that is relevant to the
> lawsuit. . . . The admission can be oral or written, or nonverbal
> conduct if intended as an assertion.

*Id.*

[¶23.]    One type of "[p]arty admission[ ] commonly admitted into evidence

include[s] a defendant's statements to police[.]" Jack B. Weinstein & Margaret A.

Berger, Weinstien's Federal Evidence, § 801.30[2] (2d ed 2009). In this case, both

defendants told Deputy Koens on the night of the incident that Cory threw Johnson

against the wall. At trial, both defendants testified that rather than throwing

Johnson, Cory was gently escorting Johnson out of the bar when Johnson staggered

and fell. Their earlier statements were clearly offered against them and were

adverse to their case at trial. Therefore, their statements qualified as non-hearsay party admissions.

[¶24.]     *DuBray* does not prohibit this type of party-opponent admission. Deputy Koens's recitation of the defendants' statements is not a narrative of his "investigation, . . . interviews, and . . . contacts" that may be "heavily influenced by the beliefs, impressions, and, at times, hunches of the investigating officer." *See DuBray,* 2004 SD 130, ¶¶ 18, 19, 690 NW2d 657, 663. The declarants' statements in *DuBray* were also from "bystanders," who we specifically noted were not parties to the action. *Id.* ¶ 19, 690 NW2d at 664. In contrast, Deputy Koens's report, other than the usual formalities, contains nothing but defendants' statements given in the course of Koens's interview. Therefore, the reliability of the sources of the information is not in question, and substantive use of the defendants' statements was permissible as party-opponent admissions under SDCL 19-16-3(1) (Rule 801(d)(2)(1)).

*Conclusion*

[¶25.]     Koens's police report was admissible under the business record exception, SDCL 19-16-10 (Rule 803(6)), to prove that Koens recorded the defendants' statements. The defendants' statements themselves were substantively admissible under SDCL 19-16-3(1) (Rule 801(d)(2)(1)) as non-hearsay admissions of party opponents. Because each level of the statements qualified for admission

under a hearsay rule, the report was admissible as hearsay within hearsay under SDCL 19-16-36 (Rule 805).

[¶26.] Affirmed.

[¶27.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶28.] MEIERHENRY and SEVERSON, Justices, concur in result.


MEIERHENRY, Justice (concurring in result).

[¶29.] I concur in result. I would decide this case under SDCL 19-16-12(3) (Rule 803(8)). SDCL 19-16-12(3) (Rule 803(8)) provides in part:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth:
> . . .
> (3) In civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, are not excluded by § 19-16-4, even though the declarant is available as a witness, unless the sources of information or other circumstances indicate lack of trustworthiness.

This rule allows public office or agency reports to be admitted in civil cases as an exception to the hearsay rule. *See supra* ¶12 (citing *Robeson*, 285 Md at 502, 403 A2d at 1223 for the proposition that hearsay evidence may be admissible for a reason not relied on by the circuit court or raised by the parties).

[¶30.] Other jurisdictions have used a similar rule in admitting information from police reports in civil cases. *See* Gaddy v. Hartford Life Ins. Co., 218 FSupp2d 1123, 1126 (EDMo 2002). *See also* Foster v. Gen. Motors Corp., 20 F3d 838, 839 (8thCir 1994). Although Koens's report contains hearsay, the relevant portion of Koens's report would have been admissible under SDCL 19-16-12(3) (Rule 803(8))'s

exception because: (1) The report was from a public office, i.e. the Grant County Sheriff's Office, and Koens was acting within his authority as a Deputy Sheriff; (2) The report sets "forth . . . factual findings resulting from an investigation made pursuant to authority granted by law"; (3) The report was offered in a civil action; and, (4) "[T]he source of information or other circumstances [did not] indicate [a] lack of trustworthiness."

[¶31.]     Once Koens's report met the requirements of SDCL 19-16-12(3) (Rule 803(8)), its contents could then be viewed for admissibility under the rules of evidence without reference to how the parties presented the issue. *Supra* ¶¶12, 20. Having concluded that Koens's report met the requirements of SDCL 19-16-12(3)(Rule 803(8)), I agree with Justice Zinter's analysis that defendants' statements within the report were admissible as non-hearsay admissions by party opponents under SDCL 19-16-3 (Rule 801(d)(2)).

[¶32.]     SEVERSON, Justice, joins this special writing.