#27692-a-DG
**2016 S.D. 69**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

RON UNDERHILL,                                    Plaintiff and Appellant,

v.

ROCKY MATTSON, BARBARA
MATTSON, CARMEN WALTON and
ALL OCCUPANTS WHO HAVE OR
CLAIM ANY INTEREST OR ESTATE
IN OR LIEN OR ENCUMBRANCE
UPON THE PREMISES DESCRIBED
IN THE COMPLAINT,                                Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RANDALL L. MACY
Judge

* * * *

DAVID L. CLAGGETT of
Claggett & Dill, Prof. LLC
Spearfish, South Dakota                          Attorneys for plaintiff and
                                                 appellant.


TIMOTHY R. JOHNS of
Johns & Kosel, Prof. LLC
Lead, South Dakota                               Attorneys for defendants and
                                                 appellees.

* * * *

                                                 CONSIDERED ON BRIEFS
                                                 ON AUGUST 29, 2016
                                                 OPINION FILED **09/28/16**

#27692

GILBERTSON, Chief Justice

[¶1.]      Ron Underhill appeals the circuit court's denial of his claims for quiet

title and conversion in relation to a garage located on his land.  The circuit court

denied these claims after determining that Carmen Walton and Rocky and Barbara

Mattson (collectively, "Defendants") acquired the garage and a small area of land

surrounding it (collectively, "the Property")[1] through adverse possession.  We

affirm.

## Facts and Procedural History

[¶2.]      This suit involves several properties located along Taylor Avenue in

Deadwood, South Dakota: Lots 8A, 59, 60, and 61 of Block 35.  Taylor Avenue is a

north–south street that terminates in a dead end on the north.  Lot 59 is the

northernmost lot abutting Taylor Avenue on the west, with Lots 60 and 61

sequentially lying to the south of Lot 59.  Lot 8A abuts Taylor Avenue on the east,

opposite Lot 61.  Taylor Avenue's northern terminus curves slightly to the

northwest and actually lies on Lots 59 and 60.  The disputed property in this case

consists of a one-car garage and the land on which it sits, which also lies on Lots 59

---

1.     A survey conducted in 2003 describes the disputed area as follows:

> A parcel of ground beginning at a point where the SE Corner of
> Lot 60, Block 35 of the P.L. Rogers Map of the City of Deadwood
> intersects with Taylor Avenue and running N 54° 05′ 33″
> 43.76 feet to the point of beginning of said parcel claimed by
> adverse possession; thence N 52° 31′ 01″ W 30.41 feet to point
> #2; thence N 52° 10′ 00″ W 38.69 feet to point #3; thence
> S 19° 52′ 43″ 11.72 feet to point #4; thence S 54° 27′ 37″ E
> 76.85 feet to point #5; thence N 10° 58′ 54″ W 2.77 feet to point
> #6; thence along the curved line, the arc length of which is
> 36.13 feet with a chord bearing N 57° 13′ 07″ E to the point of
> beginning.  All which is located on a portion of Lots 59 and 60,
> Block 35, Original Townsite of the City of Deadwood, Lawrence
> County, South Dakota.

and 60, abutting Taylor Avenue's northern terminus.  The property sits on a hillside with an ascending slope to the north and steep drop-offs to the south and west.

[¶3.]        Carmen Walton is the current record owner of Lot 8A, where she resides with her parents.[2]  Walton purchased Lot 8A and the home located thereon from the Mattsons on January 30, 2001.  The Mattsons purchased the lot and home from James and Doris Kennedy on February 10, 1976.  The Kennedys purchased the lot and home from Ole and Mary Peterson on April 23, 1952.  The Petersons acquired the property in 1914, and Ole constructed the garage in 1935.  Each of the foregoing owners used the garage during their ownership of Lot 8A.

[¶4.]        The various owners of Lot 8A have a history of using and maintaining the garage.  During the time Mattsons owned Lot 8A, their children used the area around the garage as a playground, and Rocky Mattson installed fencing to prevent their children from falling down the steep slopes.  He also conducted repairs to the property, including reroofing the garage and stabilizing the hillside adjoining one wall of the garage.  Walton and her father poured a concrete floor and driveway, raised and straightened the building, adjusted the garage doors, inserted new supports in the interior, painted the exterior, removed a tree behind the garage, and replaced the roof.  Mr. Walton landscaped the property by placing 10 tons of gravel around the garage to improve water drainage.  He also used a skid loader to level areas of the property and built a retaining wall to help prevent the garage from losing structural integrity.

---

2.     The lot on which the home sits was originally designated Lot 8.  In 2001, following a survey of the area, lot lines were adjusted and the portion of the former Lot 8 on which the home sits was designated Lot 8A.

[¶5.]     Underhill is the current record owner of Lots 59, 60, and 61. Underhill resides in a home located on Lot 61, which he acquired sometime in the year 2000. Underhill purchased Lots 59 and 60 from Martin C. Guth around September 26, 2012. Guth obtained a total of 19 lots, including Lots 59 and 60, from RTD Development Co. on April 6, 1973.

[¶6.]     Ownership of the garage did not come into question until the 1990s. In 1995, Mattsons first learned that the garage was located on Lots 59 and 60 and that those lots were owned by Guth. In 1997, the Deadwood City Attorney notified Guth that the garage and Taylor Avenue's northern terminus were located on Lots 59 and 60. Guth, who lived in Wisconsin at the time, was unaware that the garage existed or that the various property owners of Lot 8A had been using it for decades.[3] Mattsons communicated with Guth several times about formally purchasing the property, but apparently no agreement was reached.

[¶7.]     Subsequent to purchasing Lots 59 and 60, Underhill initiated this suit to quiet title in the disputed property on July 8, 2013. He also sought damages and punitive damages, alleging that Walton's continued use of the garage amounted to conversion. A trial before the circuit court was held on October 14, 2015. The court concluded that Walton had acquired the disputed property by adverse possession through her predecessors in interest. The court denied Underhill's request to quiet title and held that consequently, Underhill's conversion claim was moot.

[¶8.]     Underhill appeals, raising two issues:

_____

3.    Guth was living in New Mexico at the time he sold Lots 59 and 60 to Underhill in 2012. The circuit court noted: "None of the witnesses had ever met or seen Martin Guth."

1. Whether the circuit court erred by denying Underhill's claim for quiet title.

2. Whether the circuit court erred by denying Underhill's claim for conversion.

**Standard of Review**

[¶9.] "Proof of the individual elements of adverse possession present questions of fact for the [circuit] court, while the ultimate conclusion of whether they are sufficient to constitute adverse possession is a question of law." *City of Deadwood v. Summit, Inc.*, 2000 S.D. 29, ¶ 9, 607 N.W.2d 22, 25 (quoting *Lewis v. Moorhead*, 522 N.W.2d 1, 3 (S.D. 1994)). Therefore, the circuit court's factual findings are reviewed for clear error, and its legal conclusions are reviewed de novo. *Id.*

**Analysis and Decision**

[¶10.] **1. Whether the circuit court erred by denying Underhill's claim for quiet title.**

[¶11.] The circuit court concluded that Defendants acquired the disputed property by adverse possession. Adverse possession occurs when there is (1) an occupation that is (2) open and notorious, (3) continuous for the statutory period, and (4) under a claim of title exclusive of any other right. SDCL 15-3-12; *Titus v. Chapman*, 2004 S.D. 106, ¶ 27, 687 N.W.2d 918, 925. As the parties asserting adverse possession, Defendants have the burden of establishing these elements by clear and convincing evidence. *Summit*, 2000 S.D. 29, ¶ 15, 607 N.W.2d at 26.

[¶12.] The primary dispute in this case is whether Defendants actually occupied the Property. Because Defendants' claim is "not founded upon a written instrument, or judgment, or decree," the Property will only be deemed adversely

-4-

possessed if it has been (1) "protected by a substantial [enclosure]" or (2) "usually cultivated or improved." SDCL 15-3-13. Although the circuit court concluded that "the subject property has been continually occupied for a period of some 80 years by Walton and her predecessors in title[,]" the court did not specify which of these disjunctive conditions it relied on in reaching that conclusion. Defendants argue that their occupation of the Property is established by either condition. Because we conclude Defendants usually cultivated or improved the property, we do not address whether the Property was substantially enclosed.

[¶13.] The circuit court's factual findings support the conclusion that Defendants occupied the Property by virtue of cultivating and improving it. We have explicitly held that "regular mowing of the property constitutes cultivation under SDCL 15-3-13(2)." *Lewis v. Aslesen*, 2001 S.D. 131, ¶ 8, 635 N.W.2d 744, 747. We have also explicitly held that "landscaping is an improvement to land under SDCL 15-3-13(2)." *Id.*; *see also Schultz v. Dew*, 1997 S.D. 72, ¶ 15, 564 N.W.2d 320, 324 (recognizing the addition of gravel to a driveway as an improvement). On this issue, the circuit court made a number of relevant factual findings:

> 12. The garage sits on an excavated portion of Lots 59 and 60. Excavations have been made continuously at least since the time the garage was built.
>
> . . . .
>
> 23. During the time the Mattsons owned [Lot 8A], Mr. Mattson did repairs to the garage including reroofing and stabilization of the hillside adjoining one wall of the garage.
>
> 24. During the time the Mattsons and Ms. Walton have owned [Lot 8A], they have cut the grass on the subject property and continue to remove soil from the areas previously excavated by their predecessors in title, Ole Peterson and James Kennedy.
>
> 25. The garage in question has been there for approximately 80 years. The garage and the subject property on which it sits

> has been continuously developed and maintained during that time.
>
> . . . .
>
> 27. Defendant Walton and her father, Robert Walton, have done work to the garage (which is listed as a historical structure) including pouring a concrete floor in the garage and a concrete driveway; raising and straightening the building and adjusting the garage doors; inserting new supports in the interior; painting the exterior of the garage; removed a tree behind the garage which was impinging upon the structure; and tearing off the old roof covering and installing plywood on the roof and then putting new shingles on the roof. Mr. Walton has also landscaped the property to correct the drainage by means of tiling so that water will drain away from the garage and by placing 10 tons of gravel on the area around the garage. Mr. Walton used a [skid loader] to level out certain areas of the subject property and he built a retaining wall to keep the garage safe from sliding down the hill or otherwise losing its structural integrity.

These findings are sufficient to support the conclusion that Defendants and their predecessors in title improved the Property within the meaning of SDCL 15-3-13(2).

[¶14.] Even so, Plaintiff argues that a number of the circuit court's factual findings are erroneous. According to Plaintiff, "no evidence exists that anyone actually 'excavated' the land[,]" "[n]o pictures or documentary proof of any . . . fence were ever produced[,]" and "no retaining wall was constructed on the subject property[.]" Yet, each of these assertions is contradicted by Defendants' testimony, which the court apparently found credible. The circuit court heard testimony that Walton, the Mattsons, and the Kennedys excavated various areas of the Property. Likewise, Rocky Mattson testified that he erected a fence and retaining wall behind the garage. Defendants' testimony is evidence even though disputed by Plaintiff, *see Magner v. Brinkman*, 2016 S.D. 50, ¶ 16, 883 N.W.2d 74, 82, and Plaintiff's contrary view of the evidence is not sufficient to leave us with "a definite and firm

conviction that a mistake has been made[,]" *Summit*, 2000 S.D. 29, ¶ 9, 607 N.W.2d at 25. Therefore, the circuit court's relevant factual findings are not clearly erroneous, and we conclude Defendants established the first element of adverse possession.

[¶15.] The second element of adverse possession that Defendants must establish is that their occupation of the Property was open and notorious. The purpose of this element is to give the record owner notice of the occupation. "[T]he adverse use must be made in such a way that a reasonably diligent owner would learn of its existence, nature, and extent." *Hamad Assam Corp. v. Novotny*, 2007 S.D. 84, ¶ 11, 737 N.W.2d 922, 926 (quoting Restatement (Third) of Property: Servitudes § 2.17 (Am. Law Inst. 2000)). Notably, this standard is an objective one. Although Guth was apparently unaware of the presence of the garage or its use by the owners of Lot 8A, his lack of awareness is attributable solely to his absence from the Property and not to any concealment of the occupation by Defendants and their predecessors. Therefore, Defendants' occupation of the Property was open and notorious.

[¶16.] Next, Defendants must prove that their occupation was continuous for the statutory period. In South Dakota, the statutory period for adverse possession is 20 years. SDCL 15-3-1; *Estate of Billings v. Deadwood Congregation of Jehovah Witnesses*, 506 N.W.2d 138, 141 (S.D. 1993). Although Walton has not claimed ownership of the Property for such a length of time, "the principle of 'tacking' allows [her] to add [her] own claim[] to that of previous adverse possessors under whom [she] claims a right of possession." *Estate of Billings*, 506 N.W.2d at 141. Thus,

Walton's 12-year occupation of the Property is added to the Mattsons' 25-year occupation, the Kennedys' 24-year occupation, and the Petersons' 17-year occupation. Moreover, "adverse possession occurs by operation of law and does not require an action to commence it, nor to continue it." *Rotenberger v. Burghduff*, 2007 S.D. 19, ¶ 16, 729 N.W.2d 175, 180 (quoting *Johnson v. Biegelmeier*, 409 N.W.2d 379, 382 (S.D. 1987)). In other words, the owners of Lot 8A may have acquired ownership of the Property as early as 1955, and the duration of the Mattsons' occupation of the Property was alone sufficient to meet the statutory period.

[¶17.] Finally, Defendants' occupation of the Property must have been under a claim of title exclusive of any other right. This element does not require wrongful intent on the part of the adverse possessor. "Possession of property is adverse to the true owner . . . even though such occupancy . . . was due to mistake and without an intention to claim the land of another." *Estate of Billings*, 506 N.W.2d at 141. The owners of Lot 8A have each used and treated the Property as their own since the garage was first constructed. Additionally, the exclusivity of the title they claim is demonstrated by Walton's response to Plaintiff's entry into and use of the garage in December 2000 and January 2001. Just prior to Walton moving into Lot 8A, Plaintiff moved personal property into the garage. Walton's father advised Plaintiff that he was trespassing on Walton's property. Plaintiff capitulated and removed his property from the garage. Thus, we also conclude that Defendants have established the fourth element of an adverse-possession claim and that the circuit court did not err in denying Plaintiff's claim for quiet title.

[¶18.]    ***2.    *Whether the circuit court erred by denying Underhill's claim for conversion.**

[¶19.]    Plaintiff argues that "Mattsons' and Walton's use of the property since September of 2012, after Underhill purchased the property, clearly constitutes conversion." This argument is meritless. As Plaintiff acknowledges in his own brief, "[c]onversion is the unauthorized exercise of control or dominion over *personal property* in a way that repudiates an owner's right in the property or in a manner inconsistent with such right." *First Am. Bank & Tr., N.A. v. Farmers State Bank of Canton*, 2008 S.D. 83, ¶ 38, 756 N.W.2d 19, 31 (emphasis added) (quoting *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 20, 652 N.W.2d 756, 766). Plaintiff has failed to identify any property apart from the *real property* at issue in his quiet-title claim. Even if Plaintiff's view of the law was correct, he did not acquire Lots 59 and 60 until 2012—long after the 20-year statute of limitations had expired on Defendants' adverse possession of the Property. *See supra* ¶ 16. Thus, the circuit court did not err in denying Plaintiff's claim for conversion.

## Conclusion

[¶20.]    Defendants established by clear and convincing evidence that they and their predecessors in interest have continually occupied the Property for at least 20 years and that such occupation has been open and notorious and under a claim of title exclusive of any other right. Therefore, Defendants have met their burden of proving the elements of adverse possession, and the circuit court did not err in denying Plaintiff's claim to quiet title. Plaintiff has failed to identify any personal property taken by Defendants; therefore, the circuit court did not err in denying Plaintiff's claim for conversion.

[¶21.]      We affirm.

[¶22.]      ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.