#28461-r-JMK
**2018 S.D. 55**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

GARY J. GANGLE,                                                    Plaintiff and Appellee,

    v.

A. WILLIAM SPIRY and
PATRICIA M. SPIRY, Trustees of
THE A. WILLIAM SPIRY 2012
IRREVOCABLE TRUST,                                        Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
MARSHALL COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE TONY L. PORTRA
Judge

\* \* \* \*

JOEL E. ENGEL III
Woods, Fuller, Shultz & Smith P.C.                    Attorneys for defendants and
Sioux Falls, South Dakota                                  appellants.


GARY J. GANGLE
Lake City, South Dakota                                    Pro se plaintiff and appellee.


\* \* \* \*

                                                                        CONSIDERED ON BRIEFS
                                                                        MAY 21, 2018
                                                                        OPINION FILED **07/11/18**

#28461

KERN, Justice

[¶1.] Gary Gangle brought an action to quiet title to real property owned by A. William Spiry (Spiry) and Patricia M. Spiry, as trustees of the A. William Spiry 2012 Irrevocable Trust, under a claim of adverse possession. Spiry opposed Gangle's adverse-possession claim on the basis that Gangle and his predecessor in interest occupied the disputed property with Spiry's consent. Spiry also filed a counterclaim against Gangle to quiet title to an adjacent property under a claim of adverse possession; however, Spiry voluntarily dismissed the counterclaim before trial. After conducting a bench trial, the circuit court found that Gangle was not subject to any oral agreement Spiry had with Gangle's predecessor in interest and that Gangle was entitled to the disputed property by adversely possessing it for 40 years. In its final judgment, the circuit court also dismissed Spiry's counterclaim with prejudice. Spiry appeals. We reverse the order of the circuit court and remand the case for entry of judgment consistent with this opinion.

## Facts and Procedural History

[¶2.] Max Sckerl owned pasture land bordering Roy Lake, in Marshall County, South Dakota. Spiry approached Sckerl about purchasing property along the lake. Accordingly, Sckerl platted portions of his waterfront property into lots, and on October 8, 1968, Spiry purchased Lot 1 from Sckerl.[1] The dimensions of Lot 1 were substantially larger and extended further east than the other lots

---

1. The property platted by Max Sckerl is referred to as the Sckerl's Roy Lake Subdivision and is legally described as the Northeast Quarter of the Southwest Quarter in Section 27, Township 126, North of Range 55, West of the 5th P.M., Marshall County, South Dakota.

-1-

platted by Sckerl. At the time, a fence did not exist between Lot 1 and Sckerl's remaining pasture to the east. Spiry also purchased Lot 2 from Sckerl the following year, which borders Lot 1 to the south.[2]

[¶3.] On November 20, 1968, Gangle's father purchased Sckerl's pasture land to the east of Lot 1. In 1969, Gangle and his father constructed a barbed-wire fence running north and south through Lot 1 in an attempt to separate the newly acquired pasture land from Spiry's property. Gangle was aware Spiry's property extended east of the fence that he and his father constructed. Gangle testified, "I knew [Spiry] had property over there [to the east] but I never knew where his property was." The amount of Spiry's property that Gangle and his father had fenced off was less than an acre.

[¶4.] Spiry discovered the fence that Gangle and his father constructed across Spiry's property in the summer of 1969. Rather than require him to move the fence, Spiry gave Gangle's father verbal permission to keep the fence in place and to use his property east of the fence. At trial, Spiry testified that "[i]t saved [him from] mowing and as long as [he] still owned it and [he] could still use the property as [he] wanted to, [he] had no objection to [Gangle's father] fencing it off into his pasture."

[¶5.] In August 1975, Gangle's father passed away. Spiry, as a practicing attorney in the area, handled the probate of his estate. Gangle's father left the land to his three children, but Gangle subsequently bought out his brother's and sister's

---

2. The property was eventually deeded to the A. William Spiry 2012 Irrevocable Trust.

interests in the property via contracts for deed, which Spiry also prepared. During his interactions with Gangle involving the probate and contracts for deed, Spiry did not discuss the fence crossing his property with Gangle. However, in August 1976, Spiry had his son and a hired man place three fence posts in the approximate location of the corner of Spiry's property extending east of the fence. While the fence posts were actually about 30 yards into Gangle's pasture and not on Spiry's property, Spiry put the posts in place to indicate his ownership of the property east of the fence that Gangle occupied.

[¶6.]     Gangle continued to graze his cattle in the same manner on the disputed property for the next 40 years with no objection from Spiry. In 1996, Gangle and Spiry met at the property to discuss a stream at the northeast corner of Lot 1 that Gangle's cattle used for water. After the conversation, Spiry was comfortable "that [Gangle] understood that [the] fence was on [Spiry's] property." However, Gangle disputed that a discussion about the fence took place, pointing to a letter sent by Spiry on July 29, 1996, that encompassed only an issue with the cattle watering out of the stream and an agreement with Gangle's father regarding the same. In 2006, Gangle platted some of his property lying east of the lots in the Roy Lake Subdivision. The plat confirmed Spiry's property line extended east of the fence Gangle constructed in Lot 1. Spiry replatted Lot 1 in 2015 into three separate lots that were classified as Lots 1A, 1B, and 1C. The fence line runs through Lot 1C with the disputed property lying east of the fence.



[¶7.]	On August 17, 2017, the circuit court held a bench trial regarding Gangle's action to quiet title to the disputed property under a claim of adverse possession. Prior to the evidentiary portion of the trial, Spiry voluntarily dismissed his counterclaim seeking to quiet title under a claim of adverse possession to a 30-foot strip of land owned by Gangle that is adjacent to the dedicated road across from Lot 2A.[3] Without objection from Gangle, the circuit court dismissed the counterclaim.

[¶8.]	Spiry and his son testified at trial regarding their use of the property in Lot 1C east of the fence. Spiry's son testified that he occasionally piled unwanted brush or tree trimmings on the property, climbing over the fence to retrieve the wood when he needed it for fires down by the lake. In response, Gangle and his wife disputed Spiry's claim that he used the property east of the fence, testifying that they never saw such a brush pile.

[¶9.]	In a letter decision issued on September 19, 2017, the court framed the issue between the parties as "whether [Spiry's] permissive use to [Gangle's father]

---

3.	Lot 2A lies to the south of Lot 1B.

also applied to [Gangle] as [his] successor in interest." The court held that it did not and that Gangle proved by clear and convincing evidence he had acquired the disputed property by adverse possession. Incorporating the memorandum decision, the circuit court entered findings of fact and conclusions of law on October 19, 2017. In its final judgment, the circuit court quieted title to the disputed property in Lot 1C in favor of Gangle and dismissed Spiry's counterclaim with prejudice.

[¶10.] Spiry appeals, raising two issues for our review:

1. Whether the circuit court erred in quieting title to the disputed property in Gangle's favor on a claim of adverse possession.

2. Whether the circuit court erred in dismissing Spiry's counterclaim with prejudice.

## Standard of Review

[¶11.] "Proof of the individual elements of adverse possession present questions of fact for the circuit court, while the ultimate conclusion of whether they are sufficient to constitute adverse possession is a question of law." *Underhill v. Mattson*, 2016 S.D. 69, ¶ 9, 886 N.W.2d 348, 352. Therefore, we review a circuit court's factual findings for clear error and its legal conclusions de novo. *Id.* "Moreover, issues of statutory interpretation and application are matters of law reviewed de novo." *Ashby v. Oolman*, 2008 S.D. 26, ¶ 10, 748 N.W.2d 132, 135.

## Analysis and Decision

[¶12.] *1. Whether the circuit court erred in quieting title to the disputed property in Gangle's favor on a claim of adverse possession.*

[¶13.] Being the record owner of Lot 1C, Spiry is presumed to possess the property unless Gangle can prove he adversely possessed the property for 20 years

prior to the action being commenced. SDCL 15-3-7; *Cuka v. Jamesville Hutterian Mut. Soc'y*, 294 N.W.2d 419, 421-22 (S.D. 1980). Property that has been actually and continuously occupied under a claim of title exclusive of any other right is subject to adverse possession. SDCL 15-3-12. "To establish title by adverse possession, the claimant must be in actual, open, visible, notorious, continuous and hostile occupation for the statutory period." *Titus v. Chapman*, 2004 S.D. 106, ¶ 27, 687 N.W.2d 918, 925; *see also* SDCL 15-3-1 (providing the statutory period for adverse possession is 20 years). The claimant's occupation must be of such a nature as "to give the true owner notice of actual possession and to put him on inquiry as to the invasion of his rights." *Hamad Assam Corp. v. Novotny*, 2007 S.D. 84, ¶ 7, 737 N.W.2d 922, 924. The claimant has the burden of proving adverse possession by clear and convincing evidence. *City of Deadwood v. Summit, Inc.*, 2000 S.D. 29, ¶ 15, 607 N.W.2d 22, 26.

[¶14.] In this case, it is undisputed that Gangle was in actual, open, visible, notorious, and continuous occupation of Spiry's property east of the constructed fence in Lot 1C for the statutory period of 20 years. However, Spiry argues that Gangle's claim of adverse possession must fail because his use of the disputed property was not hostile. "[P]ossession which is not hostile cannot be adverse." *Broadhurst v. Am. Colloid Co.*, 85 S.D. 65, 75, 177 N.W.2d 261, 266 (1970). Also, we have stated that "[c]ontinued use which is permissive is insufficient to fulfill the requirement of . . . hostile use." *Travis v. Madden*, 493 N.W.2d 717, 720 (S.D. 1992); *see also* 3 Am. Jur. 2d *Adverse Possession* § 44, Westlaw (database updated May 2018).

[¶15.]     Spiry asserts that the permission given to Gangle's father to use the property east of the fence should apply to Gangle as his successor in interest and that the circuit court erred in ruling otherwise. The question whether a permissive use can ripen into one of hostility by merely transferring property is one of first impression for this Court. However, many other courts have addressed this issue, and it is well established that permissive use cannot ripen into adverse possession until a positive assertion of a right hostile to the record holder is made known to him.[4]

---

4.    *See Blalock v. Conzelman*, 751 So. 2d 2, 5 (Ala. 1999) ("[A] possession permissive in its inception cannot become adverse to the owner until a positive assertion of a right hostile to the owner is brought to him."); *Emerson v. Linkinogger*, 382 S.W.3d 806, 812 (Ark. Ct. App. 2011) (stating that permissive occupancy can become hostile and adverse when "notice of the hostility of the possessor's holding has been brought home to the owner by actual notice or by a holding so open and notorious as to raise a presumption of notice equivalent to actual notice"); *Johnson v. Raddohl*, 32 N.W.2d 860, 861 (Minn. 1948) ("Where the original entry is permissive, the statute does not begin to run against the legal owner until an adverse holding is declared and notice of such change is brought to the knowledge of the owner."); *Rice v. Pritchard*, 611 So. 2d 869, 872 (Miss. 1992) ("[P]ermission of the record owner can never ripen into adverse possession until there is a positive assertion of a right hostile to the record owner which is made known to him."); *Imperial Serv. Corp. v. Phipps*, 288 N.W.2d 749, 750 (Neb. 1980) (stating the same); *Apodaca v. Hernandez*, 302 P.2d 177, 180 (N.M. 1956) (stating the same); *Woodland v. Woodland*, 147 N.W.2d 590, 598 (N.D. 1966) (stating the same); *Hutchinson v. Taft*, 222 P.3d 1250, 1254 (Wyo. 2010) ("There must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile."); *see also* 2 C.J.S. *Adverse Possession* § 82, Westlaw (updated June 2018) ("A permissive occupant cannot change his or her possession into adverse title no matter how long possession may be continued, in the absence of a clear, positive, and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge.").

[¶16.]    For example, the Supreme Court of Rhode Island, in *Barrow v. D & B Valley Associates, LLC*, 22 A.3d 1131, 1134 (R.I. 2011), specifically addressed whether a permissive use of a strip of land expired when the owners of the dominant parcel conveyed their property.  In *Barrow*, the plaintiffs sought to quiet title to a strip of land between the boundary of their land and a stone wall situated on defendant's property that ran parallel to the property line.  *Id.* at 1131-33.  The plaintiffs' predecessors in interest received permission from the defendant to use the strip of land on his property in exchange for endorsing a development project in the neighborhood.  *Id.* at 1132-33.  After the plaintiffs acquired the land from their predecessors, they continued to use the strip of land in the same manner as their predecessors had before them.  *Id.* at 1133.  More than a decade later plaintiffs learned, as a result of an appraisal of the property, that the strip of land belonged to the defendant.  *Id.*

[¶17.]    Although the plaintiffs asserted a claim for adverse possession to the strip of land, the Supreme Court of Rhode Island, affirming the lower court, held that the plaintiffs were not entitled to the disputed property because the permission granted to plaintiffs' predecessors did not become hostile upon the subsequent transfer of the dominant parcel to the plaintiffs.  *Id.* at 1135.  The court stated that "[a] permissive use may become hostile only when the permission has been withdrawn or when events have occurred indicating that the original permission no longer obtained."  *Id.* at 1134.  It further concluded that "[w]hen permission is granted for a particular use, a later use *of the same kind* cannot be characterized as adverse."  *Id.*

[¶18.] We agree with the Rhode Island Supreme Court and other courts that permissive use does not ripen into a claim of hostility by the mere transfer of the dominant estate. In making its ruling herein, the circuit court primarily relied on its finding that Spiry "did not have an agreement, oral or in writing, with anyone other than [Gangle's father]" in determining that Gangle's use was not permissive. However, a permissive agreement with Gangle is not dispositive of the issue. Rather, Spiry's permission to Gangle's father continued through the subsequent transfer to Gangle absent proof that Gangle's permissive use changed into one of hostile occupation that would have put Spiry on notice. It is apparent upon review of the record that Gangle's use of the property never changed from that of his father's. As the Supreme Court of Wisconsin aptly stated:

> The law is very rigid with respect to the fact that a use permissive in the beginning can be changed into one which is hostile and adverse only by the most unequivocal conduct on the part of the user. The rule is that the evidence of adverse possession must be positive, must be strictly construed against the person claiming a prescriptive right, and that every reasonable intendment should be made in favor of the true owner.

*Lindokken v. Paulson*, 272 N.W. 453, 455 (Wis. 1937). Accordingly, we conclude the circuit court erred in quieting title to the disputed property in favor of Gangle because his permissive use never ripened into one of hostility necessary to claim title by adverse possession.[5]

---

5. Both parties presented arguments in their briefs regarding the doctrine of acquiescence; however, the circuit court did not mention the doctrine in its letter decision, findings of fact and conclusions of law, or its judgment. Therefore, we decline to address it.

#28461

[¶19.]     *2.     Whether the circuit court erred in dismissing Spiry's counterclaim with prejudice.*

[¶20.]     Spiry next contends that the circuit court erred by dismissing with prejudice his counterclaim to quiet title by adverse possession to a small strip of land owned by Gangle that is across from Lot 2A. Before the first witness was called at trial, Spiry's counsel stated, "[W]e'd move to dismiss [our] counterclaim as we do not wish to pursue it." The circuit court then asked Gangle if he objected, and he responded in the negative. The court dismissed the claim but did not indicate whether the dismissal was with or without prejudice. In their proposed findings of fact and conclusions of law and judgments, the parties took opposing positions on the nature of the dismissal. The circuit court's final judgment dismissed the counterclaim with prejudice. Spiry argues this was in error because under SDCL 15-6-41(a), "it is generally presumed that a voluntar[y] dismissal of a claim will not result in a dismissal with prejudice."[6]

[¶21.]     SDCL 15-6-41(a) sets forth the requirements for a voluntary dismissal of an action by a plaintiff. A plaintiff may voluntarily dismiss an action as a matter of course without a court order "[b]y filing a notice of dismissal at any time before

---

6.     Gangle opposes Spiry's argument by contending that Spiry's counterclaim is considered compulsory under SDCL 15-6-13(a) and that a dismissal with prejudice was proper because res judicata would bar the claim. *See Glover v. Krambeck*, 2007 S.D. 11, ¶ 17, 727 N.W.2d 801, 805 ("The doctrine of res judicata serves as *claim* preclusion to prevent relitigation of an *issue . . . which could have been properly raised and determined* in a prior action."). However, Gangle did not make this argument below nor did he object to Spiry's voluntary dismissal of the counterclaim. Thus, we need not address whether the counterclaim was compulsory or permissive because res judicata may be pled as a possible defense if Spiry elects to refile the claim.

-10-

service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or . . . [b]y filing a stipulation of dismissal signed by all parties who have appeared in the action." SDCL 15-6-41(a)(1). If these requirements are not met, then "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." SDCL 15-6-41(a)(2). Unless otherwise specified in the notice of dismissal, stipulation, or order of the court, the dismissal is without prejudice. SDCL 15-6-41(a)(1), (2).

[¶22.] Even though Gangle argues that SDCL 15-6-41(a) only applies to voluntary dismissals made by plaintiffs, this argument is contrary to the plain language of the statute. SDCL 15-6-41(c) provides:

> The provisions of § 15-6-41 *apply to the dismissal of any counterclaim, cross-claim, or third-party claim.* A voluntary dismissal by the claimant alone pursuant to paragraph (1) of § 15-6-41(a) shall be made before a responsive pleading is served or, if there is none, before the introduction of evidence at the trial or hearing.

(Emphasis added.) The record reveals that Spiry did not file a notice of dismissal or stipulation, *see* SDCL 15-6-41(a)(1); therefore, the provisions of SDCL 15-6-41(a)(2) apply because Spiry moved for voluntary dismissal by order of the court. *See* SDCL 15-6-7(b) ("An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing[.]").

[¶23.] We have not previously addressed whether a dismissal with prejudice rather than without prejudice is improper under SDCL 15-6-41(a)(2). Because SDCL 15-6-41(a)(2)'s language is identical to its federal counterpart, Fed. R. Civ. P. 41(a)(2), we look to decisions of the federal courts for analytical assistance. The

circuit court's decision to allow a defendant to voluntarily dismiss an action is reviewed for abuse of discretion. *Thatcher v. Hanover Ins. Group, Inc.*, 659 F.3d 1212, 1213 (8th Cir. 2011). A defendant, by order of the court, may have an action dismissed without prejudice, unless "the [plaintiff] would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217, 67 S. Ct. 752, 755, 91 L. Ed. 849 (1947). As such, "[m]any courts have taken the sensible position that dismissals without prejudice generally should be granted by the district court if no prejudicial effects would result for the opposing party." 9 Charles Alan Wright et al., *Federal Practice and Procedure* § 2364 (3d ed.), Westlaw (database updated Apr. 2018); *see also* 8 James W.M. Moore et al., *Moore's Federal Practice* § 41.40[5][a] (3d ed. 2016) ("A motion for voluntary dismissal that is not opposed or met with a relevant objection should generally be granted.").

[¶24.] Even so, the decisions of the federal appellate courts vary on what factors to consider when ruling on a motion for voluntary dismissal.[7] But here, we need not determine what factors should be considered because the circuit court dismissed the counterclaim with prejudice without any analysis of the equities or risk of prejudice to Gangle. Based upon our review of the record, we conclude the

---

7. *See* 9 Wright et al., *supra* ¶ 22, § 2364 (discussing the different factors articulated by federal appellate courts in determining whether to grant a dismissal); *see also* 8 Moore et al., *supra* ¶ 22, § 41.40[6] (listing the most common factors federal courts consider on a motion for voluntary dismissal as: "(1) the extent to which the suit has progressed, including the defendant's effort and expense in preparing for trial, (2) the plaintiff's diligence in prosecuting the action or in bringing the motion, (3) the duplicative expense of relitigation, and (4) the adequacy of plaintiff's explanation for the need to dismiss").

court abused its discretion by dismissing the counterclaim with prejudice, especially in light of the fact that Gangle did not oppose Spiry's voluntary dismissal. Therefore, we reverse the judgment of the circuit court and remand for correction of the judgment to reflect that Spiry's counterclaim be dismissed without prejudice.

### Conclusion

[¶25.]     The circuit court erred in quieting title in favor of Gangle because Gangle's permissive use did not change into one of hostile occupation that would have put Spiry on notice. Moreover, the circuit court abused its discretion in dismissing Spiry's counterclaim with prejudice. The decision of the circuit court quieting title in favor of Gangle is reversed. On remand, the court shall issue an order reflecting that Spiry's counterclaim is dismissed without prejudice.

[¶26.]     ZINTER, Acting Chief Justice, and JENSEN, Justice, and KNOFF, Circuit Court Judge, and SEVERSON, Retired Justice, concur.

[¶27.]     KNOFF, Circuit Court Judge, sitting for GILBERTSON, Chief Justice, disqualified.

[¶28.]     SALTER, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.