#30498-aff in pt, vacate, & rem in pt-SRJ
**2024 S.D. 59**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

EDWARD HOFFMAN, individually and
as administrator of the Estate of his
Mother Theresa Hoffman,                              Plaintiff and Appellant,

v.

MARCUS HOLLOW HORN and
EUNICE HOLLOW HORN, individually
and as Husband and Wife,                             Defendants, Counterclaimants,
                                                     Third-Party Complainants, and
                                                     Appellees,

v.

KIM HOFFMAN, PHYLLIS MILLER,
and ANY PERSONS CLAIMING
INTEREST IN LOT 15, BLOCK 3, DEWEY
COUNTY, EAGLE BUTTE, SOUTH
DAKOTA,                                              Third-Party Defendants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
DEWEY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MICHELLE K. COMER
Judge

\* \* \* \*

                                                     CONSIDERED ON BRIEFS
                                                     JUNE 4, 2024
                                                     OPINION FILED **09/18/24**

* * * *

THOMAS J. VAN NORMAN
Eagle Butte, South Dakota

Attorney for plaintiff and appellant.


TERRA M. LARSON
CASH ANDERSON of
May, Adam, Gerdes and
Thompson
Pierre, South Dakota

Attorneys for defendants and appellees.

#30498

JENSEN, Chief Justice

[¶1.]        In 1999, Marcus and Eunice Hollow Horn purchased a mobile home
situated on a lot in Eagle Butte, South Dakota.  The Hollow Horns began paying
rent to the purported owner of the lot, Oliver Leblanc.  Several years later, Phyllis
Miller claimed ownership of the lot and offered to sell it to Eunice.  Eunice agreed to
purchase the lot and received a quit claim deed from Phyllis.  Years later, Edward
Hoffman, the administrator of the Estate of Theresa Hoffman, claimed that his
mother Theresa had owned the lot.  He filed this quiet title action against the
Hollow Horns in his personal capacity and on behalf of Theresa's Estate.  The
Hollow Horns counterclaimed, alleging ownership of the lot by adverse possession
pursuant to SDCL 15-3-15 and alternatively, SDCL 15-3-1.  The circuit court denied
Edward's claims and quieted title to the lot in favor of the Hollow Horns based upon
both theories of adverse possession.  Edward appeals.  We affirm in part, vacate the
circuit court's entry of judgement on the alternative claim for adverse possession
under SDCL 15-3-1, and remand for the circuit court to dismiss the claim as moot.

### Factual and Procedural Background

[¶2.]        The property at issue is legally described as Lot 15, Block 3 in the city
of Eagle Butte, South Dakota (the Lot).  The Lot is fee land located within Dewey
County, on the Cheyenne River Indian Reservation.[1]  In 1984, Theresa Hoffman

---

1.    Neither party has challenged the state court's subject matter jurisdiction over
      the dispute.  Our own research confirms the state court's jurisdiction over the
      dispute.  In *County of Yakima v. Confederated Tribes and Bands of Yakima
      Indian Nation*, the United States Supreme Court recognized that states have
      plenary jurisdiction over fee land within Indian Country that was previously
      transferred by the United States by patent in fee, upon the expiration of the
                                                              (continued . . .)

received a warranty deed to the Lot, and recorded the deed with the Dewey County Register of Deeds. Four years later, Theresa obtained a $3,500 loan from Phyllis Miller and gave Phyllis a mortgage on the Lot to secure the loan. The mortgage was recorded with the Dewey County Register of Deeds in October 1988.

[¶3.] Theresa defaulted on the loan with Phyllis. Although the mortgage was never foreclosed, Theresa abandoned the Lot and ceased living there. Theresa's estranged brother, Oliver Leblanc, learned that Theresa abandoned the Lot and began holding himself out as the owner. Shortly thereafter, Kevin Finley moved a mobile home onto the Lot and began paying rent to Oliver.

[¶4.] In August 1999, the Hollow Horns purchased the mobile home located on the Lot from Kevin. Kevin informed the Hollow Horns that Oliver was the owner of the Lot and that he had been paying Oliver rent. Based on this information, the Hollow Horns began paying Oliver rent for the Lot.

[¶5.] In 2003, Phyllis learned that Oliver was holding himself out as the owner of the Lot and was charging the Hollow Horns rent for its use. Phyllis and

_____

(. . . continued)

twenty-five year trust period after the fee land was transferred. 502 U.S. 251, 264, 112 S. Ct. 683, 691, 116 L. Ed. 2d 687 (1992); *See also* 25 U.S.C.A. § 349 (West 1906) ("At the expiration of the trust period and when the lands have been conveyed to the Indians by patent in fee . . . then each and every allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the State or Territory in which they may reside[.]"). This Court has similarly held that "[a]s a general rule . . . 'the tribe has no authority itself, by way of tribal ordinance or actions in the tribal courts, to regulate the use of fee land.'" *McGuire v. Aberle*, 2013 S.D. 5, ¶ 5, 826 N.W.2d 353, 355 (citation omitted). Thus, "once tribal land is converted into fee simple, the tribe loses plenary jurisdiction over it." *Id.* (citation omitted). The record shows the Lot was patented in fee in 1910 under the authority of federal law as it existed at the time, and that more than twenty-five years have passed since its conveyance.

her husband approached the Hollow Horns and claimed that Phyllis owned the Lot. Phyllis informed Eunice that she received ownership of the Lot after Theresa had defaulted on her loan. To support her claim of ownership, Phyllis provided Eunice with various documents including the mortgage that Theresa had given her, two different tax deeds from the years 1998 and 1999 that listed Phyllis as the Lot owner, and a handwritten letter from a tribal court judge, outlining that Phyllis and her husband had the right to repossess the Lot due to Theresa's default on the mortgage loan.

[¶6.] After being confronted with this information, Oliver was unable to provide any documentation showing that he was the owner of the Lot or that he had the authority to charge the Hollow Horns rent. At that time, Oliver abandoned his claim of ownership to the Lot and did not request rent again.

[¶7.] Phyllis offered to sell the Lot to Eunice for the amount due on Theresa's outstanding loan. Relying upon the documents offered by Phyllis, Eunice agreed to purchase the Lot. To finance the purchase, Eunice received a loan from a bank which was secured by a mortgage on the Lot. Eunice paid off the loan the same year. Phyllis quit claimed the Lot to Eunice in January 2003.

[¶8.] The Hollow Horns have continuously lived on the Lot since purchasing it from Phyllis. They replaced the original mobile home with a new double wide mobile home and have made various improvements to the Lot including the addition of permanent sheds, an extended deck and patio, as well as a picket fence that lines the boundaries of the Lot. In addition to the improvements, Eunice began paying property taxes on the Lot in 2004 and continued paying the taxes on the Lot

through 2013. During this time, Eunice personally paid all of the Lot's property taxes or asked family members to deliver the tax payments on her behalf, using her personal funds.

[¶9.] While living on the Lot, Eunice worked as a nurse at Indian Health Services (IHS) in Eagle Butte. On several occasions, Theresa was a patient at IHS and would often make small talk with Eunice that centered around the Lot. At one point, Eunice told Theresa that before she met Phyllis, Oliver had been claiming ownership of the Lot and was charging her rent. Theresa reportedly responded by stating that Oliver "should not have done that." Theresa also acknowledged that the Hollow Horns had purchased the Lot and commented on how nice the changes to the Lot looked. Theresa never questioned Eunice's possession of the Lot nor did Theresa ever claim an ownership interest in the Lot during these conversations with Eunice.

[¶10.] Theresa died in 2014. Shortly after her death, Edward and his sister Kim Hoffman opened a probate proceeding in the Cheyenne River Sioux Tribal Court. Edward and Kim were assigned as co-representatives of Theresa's Estate. Kim paid the second half of the property taxes on the Lot in 2014.[2]

[¶11.] Neither Kim nor Edward communicated with the Hollow Horns about the Lot until November 2018 when Edward served the Hollow Horns with a notice to quit. Thereafter, Edward filed an eviction action against the Hollow Horns in

---

2. After 2014, the record shows that Eunice paid all the property taxes on the Lot, except for 2016 and 2017, which Edward paid.

tribal court.[3] The Hollow Horns responded to Edward's eviction action pro se. As part of their response, the Hollow Horns submitted a copy of the quit claim deed that Eunice received from Phyllis. The deed had been altered, and rather than only including Eunice's name as the grantee, Marcus's name was handwritten above Eunice's name. Eunice later filed an affidavit of possession with the Dewey County Register of Deeds Office along with the altered quit claim deed seeking to remove Theresa's name from the Lot's tax notice forms.

[¶12.] On September 5, 2019, Edward filed the current action in his personal capacity and on behalf of Theresa's Estate. The complaint sought to quiet title to the Lot, and alternatively, sought declaratory and injunctive relief declaring that the Hollow Horns lacked any ownership or possessory interest in the Lot. The complaint also alleged that the Hollow Horns committed "misrepresentation and/or fraud" by adding Marcus's name to the quit claim deed. In the alternative to the misrepresentation claim, the complaint alleged that the Hollow Horns committed slander of title by adding Marcus's name to the quit claim deed and filing it with the Dewey County Register of Deeds. The complaint also alleged that Eunice was liable for breach of fiduciary duty or "abuse of position of trust/fiduciary" by taking advantage of her position as Theresa's nurse to interfere with Theresa's ownership interest in the Lot.

[¶13.] The Hollow Horns filed an answer, counterclaim, and third-party complaint alleging that Eunice is the legal title owner to the Lot pursuant to SDCL

---

3. The tribal court stayed the eviction action pending the completion of this case.

15-3-15.  In addition to the counterclaim against Edward, the Hollow Horns filed a third-party complaint, naming Kim Hoffman, Phyllis Miller, and any persons claiming an interest in the Lot.[4]

[¶14.]	A two-day bench trial was held in August 2023.  Edward, Eunice, and Marcus were the only witnesses to testify.  At the conclusion of trial, the court found in favor of the Hollow Horns on their claims for adverse possession and entered written findings of fact and conclusions of law.[5]  The court concluded that Eunice had satisfied all the elements for adverse possession under SDCL 15-3-15.  Additionally, the court concluded that the Hollow Horns satisfied each element of adverse possession under the twenty-year statute in SDCL 15-3-1 by "tacking" the time that the Hollow Horns and Oliver claimed possession and ownership of the Lot, beginning in 1999.  The court entered a final judgment awarding both Eunice and Marcus fee title in the Lot.

[¶15.]	On appeal, Edward raises the following issues which we restate as follows:[6]

---

4.	The Hollow Horns subsequently dismissed their claims against Phyllis after the parties reached a private settlement agreement.

5.	The court granted the Hollow Horns' motion for judgment as a matter of law on Edward's claims of fraud and breach of fiduciary duty, which Edward has not appealed.

6.	Edward also claims that the circuit court erred by considering the Hollow Horns' adverse possession claim before considering "prima facie" proof that Theresa was the lawful owner of the Lot.  On the contrary, the court received evidence and considered the claims of both parties during the two-day bench trial and entered findings and conclusions determining that the Hollow Horns' claims for adverse possession defeated any claim of ownership in the Lot by Theresa.  Edward also argues that the circuit court did not apply a

(continued . . .)

1.   Whether the circuit court erred when it awarded Eunice title to the Lot under SDCL 15-3-15.

2.   Whether the circuit court abused its discretion when it admitted out-of-court statements made by Theresa and Oliver.

3.   Whether the circuit court erred in concluding that the Hollow Horns met all the elements for adverse possession under SDCL 15-3-1.

## Analysis and Decision

### *1.   Adverse possession under SDCL 15-3-15.*

[¶16.]   "Proof of the individual elements of adverse possession present questions of fact for the circuit court, while the ultimate conclusion of whether they are sufficient to constitute adverse possession is a question of law." *Gangle v. Spiry*, 2018 S.D. 55, ¶ 11, 916 N.W.2d 119, 123 (quoting *Underhill v. Mattson*, 2016 S.D. 69, ¶ 9, 886 N.W.2d 348, 352).   "Therefore, we review a circuit court's factual findings for clear error and its legal conclusions de novo." *Id.* (quoting *Underhill*, 2016 S.D. 69, ¶ 9, 886 N.W.2d at 352).

[¶17.]   SDCL 15-3-15 creates a shortened ten-year period for obtaining title through adverse possession when real property taxes have been continuously paid:

---

(. . . continued)
   clear and convincing standard of proof for the Hollow Horns' adverse possession claims. *See Titus v. Chapman*, 2004 S.D. 106, ¶ 28, 687 N.W.2d 918, 926 (requiring proof by clear and convincing evidence for a claim of adverse possession).   While the court did not explicitly identify the standard of proof, this Court has routinely stated that when the "trial court [does] not specifically enunciate the standard of proof it used to decide [a] case[,] [t]here is a rebuttable presumption that the trial court applied the appropriate standard of proof." *Matter of Estate of Fiksdal*, 388 N.W.2d 133, 134 (S.D. 1986) (citation omitted).   Edward has not rebutted this presumption by showing how the court applied the wrong standard of proof or that any of the court's findings are not supported by clear and convincing evidence.

> Every person in the actual possession of lands or tenements under claim and color of title made in good faith, and who shall have continued for ten successive years in such possession, and shall also during said time have paid all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements to the extent and according to the purport of his paper title. All persons holding under such possession by purchase, devise, or descent before said ten years shall have expired, and who shall have continued such possession and payment of taxes as aforesaid so as to complete said term of ten years of such possession and payment of taxes, shall be entitled to the benefit of this section.

"We have condensed this statute into three textual elements: '(1) claim and color of title made in good faith, (2) ten successive years in possession, and (3) payment of all taxes legally assessed.'" *Healy Ranch P'ship v. Mines*, 2022 S.D. 44, ¶ 48, 978 N.W.2d 768, 781 (quoting *Ashby v. Oolman*, 2008 S.D. 26, ¶ 12, 748 N.W.2d 132, 135). Adverse possession under SDCL 15-3-15 does not have a hostility requirement. *Mohnen v. Estate of Mohnen*, 2024 S.D. 35, ¶ 20, 9 N.W.3d 481, 486–87.

[¶18.] Edward challenges only the circuit court's finding that Eunice received color of title in good faith under SDCL 15-3-15. In support, he argues that Eunice was not a good faith purchaser because she never checked title records before completing the purchase to confirm that Phyllis was the owner of the Lot. According to Edward, this evidence supports a finding that Eunice was not a good faith purchaser because "[s]he had actual notice that Theresa Hoffman had an interest in the land and obtained documents from Phyllis Miller with Theresa's name as [the] record owner." He also claims that after Eunice obtained possession of the defective deed, she "forged" the deed by writing in Marcus's name and asserted a joint ownership interest in the Lot during the tribal court proceedings.

According to him, these actions are further evidence that she did not possess the deed in good faith.

[¶19.]    Eunice cites *Sioux City Boat Club v. Mulhall*, 79 S.D. 668, 117 N.W.2d 92, 96 (1962), to argue that "[g]ood or bad faith is assessed at execution of the instrument purporting color of title." She contends that the facts available to the court surrounding the time the deed was executed support its finding that she purchased the Lot and received a deed from Phyllis in good faith. Prior to the purchase, Eunice claims that Phyllis provided documentation supporting her claim of ownership and that Oliver's abandonment of any ownership interest in the Lot further "aided in Eunice's belief that [Phyllis] was the true owner of the [Lot] and possessed the right to transfer title." She also argues that the bank's willingness to finance the purchase of the Lot further supports the court's finding that she purchased the Lot in good faith.

[¶20.]    "Bad faith is never presumed; one who challenges the good faith of the occupant in this type of case must overcome the presumption of good faith." *Andree v. Andree*, 291 N.W.2d 788, 791 (S.D. 1980) (citations omitted); *see also* 2 C.J.S. Adverse Possession § 297 ("The presumption of good faith obtains until rebutted by proof to the contrary."). "What constitutes good faith is a question for the trier of fact." *Id.* (citing *Armstrong v. Cities Serv. Gas Co.*, 502 P.2d 672, 683 (Kan. 1972)). "The notion of good faith is defined as an 'honest belief[.]'" *Healy Ranch P'ship*, 2022 S.D. 44, ¶ 63, 978 N.W.2d at 784 (quoting *Parker v. Vinson*, 11 S.D. 381, 77 N.W. 1023, 1024 (1899)).

[¶21.]     The good faith element must exist, however, not just at the time of execution, but throughout the entire statutory period. "[T]he elements and requisites of title are color of title to the real property, *possession under claim and color of title made in good faith for the required time* and payment of all taxes for ten successive years. If these requisites exist *at the end of the statutory period*, title is acquired." *Sioux City Boat Club*, 79 S.D. at 675, 117 N.W.2d at 95–96 (emphasis added) (citations omitted).

[¶22.]     Eunice had been paying Oliver rent for almost four years when she was approached by Phyllis, who claimed to be the owner of the Lot and provided documentation to support her claim of title. Any potential concerns about the legitimacy of Phyllis's ownership were further dispelled when Oliver was unable to provide any documentation confirming his ownership of the Lot. Based upon these facts, Eunice paid Phyllis the asking price for the Lot and received a quit claim deed. These facts were sufficient for the court to find that "Eunice had a good faith belief and confidence that she was receiving proper title" to the Lot.

[¶23.]     More importantly, Edward failed to present evidence rebutting the presumption that Eunice acted in good faith during the ten-year statutory period. Edward claims that Eunice's failure to further inquire into Phyllis's claimed ownership is evidence of bad faith. However, he cites no authority to support such a claim and our review of the court's findings is limited to "whether on the entire evidence [we are] left with a definite and firm conviction that a mistake has been committed." *Andree*, 291 N.W.2d at 791 (citation omitted). Although it is true that the documents Eunice received included Theresa's name, they were accompanied by

a reasonable explanation that Theresa had forfeited her ownership interest in the Lot due to her default on the mortgage. These documents further informed Eunice's belief that Phyllis was the owner of the Lot, rather than put her on notice that she was purchasing a defective deed.

[¶24.] Nonetheless, Edward also contends that the presumption of good faith was rebutted by evidence that every year "since 2001 or 2003" Eunice received a property tax notice that also listed Theresa as an owner of the Lot. However, the tax notice forms, without more, do not overcome the presumption of Eunice's good faith. Eunice was aware that Theresa was the owner of the Lot before she defaulted on the mortgage loan she received from Phyllis. Additionally, when Eunice inquired into why Theresa's name was on the tax forms, she was told by the Dewey County Register of Deeds that all she needed to do was fill out various paperwork to formally remove Theresa from the notice forms.

[¶25.] Edward also asserts that the alteration of Eunice's quit claim deed and the fraud upon the court, to add Marcus's name to the deed, rebuts a presumption of good faith on the part of Eunice. However, there is no evidence that Eunice altered the deed or that it was done to bolster Eunice's claim for adverse possession under SDCL 15-3-15. Further, the circuit court found that "there is no evidence that the copy of the deed submitted to the tribal court in 2018, with Marcus Hollow Horn's name written in, existed at the time of execution of the deed" and there are no facts in the record to show that the alterations occurred at any time during the relevant ten-year timeframe. At trial, the Hollow Horns testified that they did not recall when or why Marcus wrote his name on the deed. Finally, the circuit court found

that their testimony was "credible [and] that they did not add Marcus's name to commit a fraud upon the tribal court [in 2018]." "The trial court [was] in a better position to judge the credibility of witnesses . . ." and in the absence of evidence suggesting that Eunice acted in bad faith, the presumption of good faith has not been rebutted. *Ducheneaux v. Miller*, 488 N.W.2d 902, 916 (S.D. 1992).

[¶26.]    In the end, Edward had the burden to show that Eunice did not obtain or possess the Lot in good faith. *See Healy Ranch P'ship.*, 2022 S.D. 44, ¶ 63, 978 N.W.2d at 784 (citation omitted). Edward has not presented any evidence to support a claim that Eunice purchased or possessed the Lot in bad faith. Furthermore, the evidence in the record overwhelmingly supports the court's finding that Eunice possessed the Lot in good faith throughout the ten-year period. These facts, along with Edward's inability to point to any facts suggesting Eunice came into or possessed the Lot in bad faith, lead us to conclude that Edward failed to overcome the presumption of Eunice's good faith and that the circuit court properly granted a judgment quieting title to the Lot in favor of Eunice under SDCL 15-3-15.

### 2. Out-of-court statements offered for non-hearsay purposes.

[¶27.]    Edward argues that the court erred by admitting various out-of-court statements made by Theresa to Eunice while Theresa was a patient at IHS.[7] Additionally, Edward argues that Eunice improperly testified to out-of-court statements made by Oliver regarding his ownership interest in the Lot. More

---

7.    Edward's brief does not individually analyze each out-of-court statement that he asserts should not have been admitted. Instead, he provides an extensive list of citations to the trial transcript.

specifically, Edward asserts that these statements were only admissible under the exception for statements of a decedent under SDCL 19-19-804(b)(5) and that the circuit court was required to make findings before admitting each statement, including the fact that "the statement was made by decedent, and that it was in good faith, and on decedent's personal knowledge." Because these findings were not made by the court, Edward argues that each statement should have been precluded from admission. Furthermore, with respect to the statements made by Oliver, Edward argues that SDCL 19-19-804(b)(5) does not encompass his statements because he is not a party in the suit. *See* SDCL 19-19-804(b)(5).

[¶28.]     In response, the Hollow Horns argue that the out-of-court statements identified in Edward's brief are not hearsay because they were not offered to prove the truth of the matter asserted and were admitted for their effect on Eunice's good faith belief that she was the owner of the Lot. Alternatively, the Hollow Horns suggest that any statements that were improperly admitted was harmless error because they were not "dispositive as to the circuit court's determination of Eunice's good faith in the matter[,]" and that Edward has failed to show how the admission of these statements unduly prejudiced his case.

[¶29.]     A "trial court's evidentiary rulings are presumed correct and will not be overturned absent a clear abuse of discretion. An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *St. John v. Peterson*, 2011 S.D. 58, ¶ 10, 804 N.W.2d 71, 74 (quoting *Mousseau v. Schwartz*, 2008 S.D. 86, ¶ 10, 756 N.W.2d 345, 350). "An evidentiary ruling will not be overturned unless error is demonstrated and shown to be

prejudicial error." *Id.* (quoting *Novak v. McEldowney*, 2002 S.D. 162, ¶ 7, 655 N.W.2d 909, 912). Although the "'admission of evidence in violation of a rule of evidence is an error of law that constitutes an abuse of discretion,' admitting evidence on an incorrect ground will be affirmed if the evidence was admissible on a different ground." *Johnson v. O'Farrell*, 2010 S.D. 68, ¶ 12, 787 N.W.2d 307, 312 (citations omitted). This Court will affirm even when the proper grounds for admission were not raised by the parties at trial. *Id.* (citing *Robeson v. State*, 403 A.2d 1221, 1223 (Md. 1979)).

[¶30.] There is no dispute that the circuit court did not make any findings necessary to apply the exception for statements of a decedent in SDCL 19-19-804(b)(5). Thus, the only remaining question is whether the statements were not offered for the truth of the matter asserted as claimed by the Hollow Horns. "To constitute hearsay, the statement must be an out-of-court assertion 'offered in evidence to prove the truth of the matter asserted.'" *State v. Whitfield*, 2015 S.D. 17, ¶ 13, 862 N.W.2d 133, 138 (quoting SDCL 19-16-1(3) (Rule 801(a)-(c))). "[A] statement is not hearsay if it is offered for a purpose other than to prove the truth of the matter asserted." *Id.* (citing *State v. Graham*, 2012 S.D. 42, ¶ 28, 815 N.W.2d 293, 305). The circuit court has discretion to determine whether a particular statement is made for the truth of the matter asserted. However, the circuit court did not specifically consider whether each statement Edward objected to was offered for the truth of the matter asserted, nor did the court indicate any intention to limit the purpose of these statements as suggested by Eunice. A review of the offered statements made by Theresa and Oliver suggests that at least some of the

-14-

statements may have been offered for the truth of what Theresa or Oliver stated and may have been inadmissible hearsay.

[¶31.] However, even if it was error to admit these prior statements by Theresa and Oliver, the circuit court's findings do not suggest that it relied upon any of these statements to find that Eunice acted in good faith during the relevant ten-year period. Furthermore, Edward has not identified how he was prejudiced by the admission of any statement he alleges was improperly admitted, and we are unable to find the same. From our review of the record, the statements made by Theresa and Oliver were not a critical component to the court's finding of good faith and there was sufficient evidence outside of these statements to support the court's conclusion that Eunice was a good faith possessor of the Lot throughout the ten-year timeframe required by SDCL 15-3-15. "Error is prejudicial if it most likely has had some effect on the verdict and harmed the substantial rights of the moving party." *Voorhees Cattle Co., LLP v. Dakota Feeding Co., LLC*, 2015 S.D. 68, ¶ 17, 868 N.W.2d 399, 408. The abundance of evidence outside of the potentially inadmissible testimony offered by Eunice, along with Edward's inability to articulate how the statements' admission in all probability affected the outcome of his case, do not lead us to a conclusion that any erroneous admission of the out-of-court statements was prejudicial.

### 3. *Adverse possession claims by Eunice and Marcus.*

[¶32.] After granting title to the Lot in favor of Eunice on her claim for adverse possession under SDCL 15-3-15, the circuit court also found in favor of the Hollow Horns' alternative claim for adverse possession under SDCL 15-3-1. The

court then entered a judgment in favor of the Hollow Horns quieting title to the Lot in their names. However, by operation of law, title to the Lot had already vested in Eunice at the end of 2013, pursuant to SDCL 15-3-15, after she had continuously possessed and paid taxes on the property under color of title for a period of ten years.[8] *See Underhill*, 2016 S.D. 69, ¶ 16, 886 N.W.2d at 354 ("[A]dverse possession occurs by operation of law and does not require an action to commence it, nor to continue it.").

[¶33.] Because title had already vested to Eunice by the end of 2013, and before any joint claim for adverse possession had vested in the Hollow Horns, the circuit court's confirmation of Eunice's adverse possession claim under SDCL 15-3-15, and our affirmance of that decision renders moot the Hollow Horns' alternative claim for adverse possession under SDCL 15-3-1. *See Netter v. Netter*, 2019 S.D. 60, ¶ 9, 935 N.W.2d 789, 791 ("[A] case is moot when 'there has been a change of circumstances or the occurrence of an event by which the actual controversy ceases and it becomes impossible for the [court] to grant effectual relief.'"). Therefore, we decline to address the court's entry of judgment on the Hollow Horns' adverse possession claim under SDCL 15-3-1, vacate the portion of the circuit court's judgment quieting title in favor of the Hollow Horns, and remand for the circuit

---

8. In contrast, the Hollow Horns' joint claim for adverse possession under the twenty-year statute in SDCL 15-3-1 could not have vested by 2013 based upon the circuit court's uncontested finding that Theresa had "abandoned the property and no longer claimed ownership of the property in the mid-to-late 1990s." The court also found that Finley did not begin possessing the Lot and renting from Oliver until the "mid-to-late 1990s." Thus, even if the Hollow Horns could tack their adverse possession claim with Finley and Oliver, the Hollow Horns' adverse possession claim under SDCL 15-3-1 could not have vested prior to 2013.

court to dismiss the Hollow Horns' alternative claim for adverse possession. *See Id.* ¶ 10, 935 N.W.2d at 791 (When a claim has become moot, "the appropriate resolution is to vacate any ruling by the lower court and 'remand with instructions to dismiss.'").

## Conclusion

[¶34.] We affirm the circuit court's entry of judgment quieting title in favor of Eunice pursuant to SDCL 15-3-15. The alternative claim for adverse possession by Marcus and Eunice was rendered moot by the circuit court's ruling on Eunice's claim and we vacate the portion of the court's judgement quieting title in favor of the Hollow Horns and remand for the circuit court to dismiss the Hollow Horns' alternative claim for adverse possession under SDCL 15-3-1.

[¶35.] KERN, SALTER, DEVANEY, and MYREN, Justices, concur.